OPINION OF THE COURT
Jasen, J.
On this direct appeal by defendant Attorney-General, we are asked to decide whether the Attorney-General may *586 commence a criminal prosecution pursuant to section 343 of the General Business Law against persons who refuse to comply with subpoenas issued under that statute while a motion to quash or modify said subpoenas is pending.
In connection with an antitrust investigation of the ready-mix concrete industry in New York City, the Attorney-General served subpoenas on plaintiffs pursuant to section 343 of the General Business Law. The subpoenas were returnable on various dates between November 24 and December 7, 1982. On November 22, 1982, plaintiffs moved pursuant to CPLR 2304 to quash or modify the subpoenas and two days later requested preliminary in-junctive relief. By order filed December 3, 1982, Special Term enjoined the Attorney-General from enforcing either the subpoenas served on plaintiffs or sections 343 and 345 of the General Business Law pending a hearing of the parties’ other motions. The Attorney-General appealed Special Term’s grant of injunctive relief to the Appellate Division and thereby obtained an automatic stay of Special Term’s order pursuant to CPLR 5519. Plaintiffs never moved to vacate or modify that stay.
In the interim, plaintiffs commenced the instant action by serving a summons and complaint and later, on December 16, 1982, served an amended complaint adding a fifth cause of action which, when read broadly, seeks a declaration that section 343 of the General Business Law, insofar as it allows the Attorney-General to commence a criminal prosecution against plaintiffs prior to determination of plaintiffs’ pending motion to quash, is violative of plaintiffs’ due process rights.[1]
The Attorney-General answered the amended complaint and shortly thereafter cross-moved for summary judgment. *587 On January 14, 1983, plaintiffs made an application for and obtained a second grant of temporary injunctive relief. The Attorney-General appealed to the Appellate Division from this order and once again received an automatic stay by operation of CPLR 5519. The plaintiffs again made no attempt to vacate or modify the stay. Both of Special Term’s orders granting temporary injunctive relief were subsequently affirmed by the Appellate Division on June 28, 1983. (95 AD2d 988.)
In an opinion dated June 9, 1983, Special Term, inter alia, granted summary judgment in favor of plaintiffs with respect to their fifth cause of action, declaring, in the fourth decretal paragraph of the final judgment, section 343 of the General Business Law “to be unconstitutional, null and void insofar as it applies to any person who has commenced proceedings pursuant to CPLR Section 2304 seeking an order quashing or modifying a subpoena issued by the Attorney-General pursuant to General Business Law Section 343 before a court of competent jurisdiction prior to the date of commencement of a prosecution of such a person pursuant to such provision for non-compliance with such subpoena on the grounds of denial of such a person’s rights guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States.”
The Attorney-General has taken a direct appeal from Special Term’s final judgment to this court pursuant to CPLR 5601 (subd [b], par 2). As a result of the procedural posture in which this appeal comes before us, the constitutional question raised by Special Term’s declaration in the fourth paragraph of its judgment is the only question which we may consider and determine. (NY Const, art VI, § 3, subd b, par [2].)[2]
The question presented, when distilled to its simplest form, is whether in terms of due process it is fundamentally unfair to allow the Attorney-General to prosecute a person under section 343 of the General Business Law for refusing to comply with a subpoena where that person has *588 previously made a motion to quash the subpoena which is pending at the time the prosecution is commenced.[3]
We begin our analysis by recognizing that due process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand. (Morrissey v Brewer, 408 US 471, 481; Health Ins. Assn. v Harnett, 44 NY2d 302, 309.) It is neither “a mechanical formula or a rigid set of rules” (Dobkin v Chapman, 21 NY2d 490, 502; see Matter of Coates, 9 NY2d 242, 249), nor a fixed concept which can be applied without regard to the individual circumstances of each case (Cafeteria Workers v McElroy, 367 US 886, 895; see, also, Matter of Sanford v Rockefeller, 35 NY2d 547, 563, app dsmd sub nom. Collins v Carey, 421 US 973). Accordingly, it has long been recognized that consideration of issues of procedural due process requires an evaluation of the interests of the parties to the dispute, the adequacy of the contested procedures to protect those interests and the government’s stake in the outcome. (Mathews v Eldridge, 424 US 319, 334-335; Dobkin v Chapman, 21 NY2d 490, 502, supra.) As the Supreme Court in Mathews v Eldridge (supra, at p 335) posited, “identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” In applying this test to the appeal before us, we hold that there is no constitutional bar to the Attorney-General commencing a criminal proceeding pursuant to section 343 of the General Business Law against an individual who refuses to comply with a subpoena even though he had previously moved to quash that subpoena under CPLR 2304.
The plaintiffs’ private interests involved in this case are clearly substantial ones; they face civil and criminal penal *589 ties should they be convicted of wrongfully refusing to obey the command of the subject subpoenas. (General Business Law, § 343.) It is equally clear, however, that the government’s interest in this matter is also substantial. The Attorney-General has been given broad investigatory responsibilities to carry out his vital role to protect the public safety and welfare (Matter of Hynes v Moskowitz, 44 NY2d 383, 396) and the government’s interest in maintaining the Attorney-General’s investigatory powers free from unnecessary hindrances takes on added importance in a case such as this where he is acting in furtherance of this State’s strong public policy in favor of promoting and protecting free competition. (General Business Law, § 340, subd 1; Columbia Gas v New York State Elec. & Gas Corp., 28 NY2d 117, 127.) Indeed, New York’s interest in the efficient enforcement of its antitrust laws has been described as representing “a public policy of the first magnitude”. (Matter of Aimcee Wholesale Corp. [Tomar Prods.], 21 NY2d 621, 625.) Thus, on balance, it is readily apparent that both plaintiffs and the Attorney-General have important interests at stake here which are worthy of protection.
The final factor which must be balanced in resolving plaintiffs’ due process claim — the adequacy of the procedural safeguards to protect plaintiffs from an erroneous imposition of civil or criminal penalties — persuades us of the reasonableness of the Attorney-General’s action in this case. According to the express provisions of section 343 of the General Business Law, plaintiffs cannot be held criminally or civilly liable for refusing to comply with the Attorney-General’s subpoenas unless they have done so “without good cause”. As a result, in response to the Attorney-General’s decision to prosecute plaintiffs for their failure to comply, they will have a full and fair opportunity during the criminal proceeding to assert a “good cause” defense. Thus, if their refusal to obey the command of the subpoenas was done for good cause, no liability will attach. In our view, this opportunity is a significant safeguard against arbitrary governmental action and surely precludes the right to challenge the issuance of the subpoena. However, although the opportunity to challenge the propriety of subpoenas in a criminal proceeding was adequate *590 in and of itself to constitute a procedural safeguard adequate to insulate an individual from an erroneous deprivation of liberty or property, this was not the only vehicle available to plaintiffs to so protect themselves.
Plaintiffs also had the opportunity to move pursuant to CPLR 2304 to modify or quash the subpoenas and to obtain, upon a showing of probable merit and irreparable harm, a preliminary order staying the accrual of penalties for noncompliance until the motion to quash or modify had been decided on the merits. Plaintiffs could also have requested, in conjunction with their motions to quash, that the return date of the subpoenas be extended until the motions were decided. While plaintiffs did move under CPLR 2304 and successfully requested preliminary injunc-tive relief, the orders granting said relief were automatically stayed pursuant to CPLR 5519 by virtue of the Attorney-General’s appeal to the Appellate Division and at no time did plaintiffs seek to vacate the statutory automatic stays. Thus, although an additional opportunity to prevent the accrual of penalties was available to plaintiffs, they chose not to avail themselves of it and as a result cannot now be heard to complain that they were not afforded a reasonable opportunity to protect themselves from civil or criminal liability.
In a somewhat analogous case, the United States Supreme Court held that where a party failed to either seek judicial review of Federal Trade Commission orders prior to commencement of a civil forfeiture action or to seek a stay once litigation had begun, due process considerations did not afford the individual a remedy from the forfeiture. (St. Regis Paper Co. v United States, 368 US 208, 225-226.) The court noted that it could not say that the party “had ‘no chance’ to prevent the running of the forfeiture pending a test of the validity of the orders.” (Id., at p 227.) In another case, Reisman v Caplin (375 US 440), the court held that there was no constitutional invalidity to an Internal Revenue Service procedure where the petitioners were served with summonses directing the production of business records before a hearing officer. There, as here, the individuals were allowed to challenge the summonses in a proceeding where no sanctions could be imposed for noncompliance *591 and were also afforded a second opportunity to challenge the summonses in any resulting enforcement action. It was further noted that the opportunity obtain a stay while testing the summonses would insulate the witnesses from liability. {Id., at p 449.) The adequacy of available procedures to test the validity of the government’s action in both St. Regis Paper Co. v United States and Reisman v Caplin persuaded the court that the parties’ due process rights had not been abridged.
After balancing the competing interests of plaintiffs and the Attorney-General and the degree of protection which existing safeguards provide for plaintiffs in light of the particular facts and circumstances of this case, we hold that the Attorney-General was entitled, consistent with due process, to commence a criminal prosecution against plaintiffs pursuant to section 343 of the General Business Law for refusing to comply with the issued subpoenas even though a motion to quash the subpoenas was pending. To hold otherwise would enable individuals lawfully subpoenaed to unnecessarily delay important ongoing criminal investigations simply by filing a motion to quash, regardless how frivolous the motion may be. Due process does not require such a result.
Accordingly, the judgment of Special Term insofar as appealed from should be reversed, with costs, and section 343 of the General Business Law should be declared constitutional insofar as it applies to persons who commenced a CPLR 2304 proceeding to quash or modify a subpoena prior to commencement of a criminal prosecution.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur.
Judgment, insofar as appealed from, reversed, etc.

. Both the original and amended complaints challenged (1) the constitutionality of section 343 of the General Business Law insofar as it imposed a “silence directive” on witnesses examined by the Attorney-General and (2) the constitutionality of the immunity provisions of section 345 of the General Business Law. The court below upheld the constitutionality of section 345 of the General Business Law and plaintiffs did not appeal from that portion of the final judgment. The court below also declared the “silence directive” of section 343 of the General Business Law to be unconstitutional and enjoined its enforcement. The Attorney-General initially appealed from the portions of the final judgment concerning the “silence directive”, as well as from the portions of the final judgment relating to the fifth cause of action. However, by stipulation dated January 25, 1984, and filed with this court on February 2,1984, the portion of the appeal relating to the “silence directive” was withdrawn.

. The Attorney-General states in his brief, under the caption “statement concerning jurisdiction”, that the aforesaid constitutional question is “the only question raised by the appeal”. Thus, we do not read the second point in his brief as raising a nonconstitu-tional question which would preclude this court from considering the appeal. (See Matter of Merced v Fisher, 38 NY2d 557; Matter of Coates, 5 NY2d 917.)

. We note that we are not presented with and have no occasion to address the question of what the Attorney-General’s enforcement powers might be after there has been an initial judicial determination ordering a subpoena quashed.