**STATE OF NEW YORK, Plaintiff,**

v.

**CEDAR PARK CONCRETE CORP., et al., Defendants.**

**STATE OF NEW YORK, Plaintiff,**

v.

**CENTURY MAXIM CONSTRUCTION CORP., et al., Defendants.**

Nos. 85 Civ. 1887(LBS), 86 Civ. 8128(LBS).

United States District Court, S.D. New York.

Jan. 16, 1990.

Robert Abrams, New York State Atty. Gen., New York City (Alice McInerney, Robert Hubbard, Troy Webber, George Sampson, Robert Roach, of counsel) for State of N.Y.

Morvillo, Abramowitz & Grand, P.C., New York City (Michael Silberberg, Kathy S. Marks, of counsel) for Dic–Underhill, Joseph DePaola, Frank Phelan, and Walter Goldstein.

Wilentz, Goldman & Spitzer, P.C., Woodbridge, N.J. (Roger B. Kaplan, of counsel) and Christy & Viener, New York City (Daniel J. Sullivan, of counsel) for Cedar Park Concrete Corp.

Shea & Gould, New York City (Michael Feldberg, of counsel) for Century–Maxim Const. Corp.

Gerald L. Shargel, and Meister, Leventhal & Slade, New York City (Ronald Meister, Edward Shakin, of counsel) for G & G Concrete Corp.

Sylvor, Schneer, Gold & Morelli, New York City (Richard L. Gold, of counsel) for

Julius Nasso Concrete Corp. and Nasso/S & A.

Gerald Lefcourt, New York City, for S & A Concrete.

Goodkind, Labaton & Rudoff, New York City (Mark S. Arisohn, of counsel) for North Berry Concrete.

SAND, District Judge.

After full briefing and oral argument, the Court adopts and approves the Order of Nov. 15, 1989.

So ordered.

KATHLEEN A. ROBERTS, United States Magistrate:

Presently before me is a motion by plaintiff for an order precluding disclosure by the State of certain documents claimed to be privileged. For the reasons set forth below, plaintiff's motion is granted in part and denied in part.

### BACKGROUND

These two actions, brought pursuant to the federal antitrust laws and the New York Donnelly Act, N.Y.Gen.Bus.L. § 340 *et seq.*, allege that defendants participated in a scheme to rig bids and allocate reinforced concrete construction projects in New York City.

Both actions are the result of a civil investigation conducted by the Attorney General pursuant to § 343 of the Donnelly Act, which paralleled a related investigation by a New York County Grand Jury that expired without returning any indictments. The complaint against defendants Cedar Park Concrete Corporation, *et al.* ("*Cedar Park*") was filed on March 20, 1985; the complaint against Century Maxim Construction Corporation, *et al.* ("*Century Maxim*") was filed on October 22, 1986. Amended complaints were filed in both actions on June 27, 1988. Another lawsuit resulting from the Attorney General's investigation, *State of New York v. Transit Mix Concrete, et al.*, 84 Civ. 4194

(S.D.N.Y.) is pending before Judge Sprizzo. The allegations of these complaints have also been the subject of two federal criminal prosecutions in this district, *United States v. Salerno*, 85 Cr. 139(RO) ("the Commission Case") and *United States v. Salerno*, 86 Cr. 245(MJL) ("*Salerno II*"), brought against some of the defendants in these actions.

### THE STATUTE OF LIMITATIONS ISSUE

A major issue in *Cedar Park* and *Century Maxim*, and in the pending discovery dispute, is the statute of limitations, which has been asserted as a defense in both actions. Plaintiff alleges that the conspiracy charged in the complaints began "at least as early as 1978" and continues to the present. Under federal law, an action must be "commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. The same four-year statute of limitations applies to an action to recover damages under the Donnelly Act. N.Y.Gen. Bus.L. § 340(5). An action to recover civil penalties under the Donnelly Act must be brought "within three years after the commission of the act upon which it is based." N.Y.Gen.Bus.L. § 342–a. Accordingly, the *Cedar Park* action is barred to the extent a cause of action accrued prior to March 20, 1981, for damages, and prior to March 20, 1982, for civil penalties; the *Century Maxim* action is barred to the extent a cause of action accrued prior to October 22, 1982, for damages, and prior to October 22, 1983, for civil penalties.

Plaintiff seeks to defeat the statute of limitations defense in part by invoking the equitable doctrine of fraudulent concealment, which permits tolling of the statute of limitations if plaintiff proves 1) that the defendant concealed the existence of the cause of action; 2) that plaintiff remained in ignorance of that cause of action until some point within four years of the commencement of the action;[1] and 3) that

---

[1] Although the Attorney General acknowledges that a "formal" investigation of the concrete industry was commenced on July 27, 1982, the complaints assert that "admissible evidence" was first "uncovered" on June 16, 1983 (*see* Amended Complaints ¶ 47(d)); that plaintiff did

plaintiff's continuing ignorance was not attributable to lack of diligence. Amended Complaints ¶¶ 47–53; *see State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065, 1083 (2d Cir.1988), *cert. denied*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1989); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2d Cir.1974).

Defendants contend, and I agree, that by pleading fraudulent concealment, plaintiff has placed in issue the question of when the Attorney General acquired, or should have acquired, actual knowledge of plaintiff's claims.

The State concedes that the *Century Maxim* defendants are entitled to discovery regarding what the Attorney General knew before October 22, 1982 (four years prior to the filing of the complaint). *See, e.g.,* Plaintiff's June 26, 1989 Memorandum of Law at 11. Plaintiff argues that the claim for civil penalties does not entitle defendants to additional discovery because the statute of limitations for civil penalties runs from the last overt act in furtherance of the conspiracy. Plaintiff's June 26, 1989 Memorandum of Law at 12–13. This contention is vigorously disputed by defendants, who also point out that even if plaintiff is correct as to the law, there will be disputed issues of fact regarding if and when particular defendants participated in, and/or withdrew from the alleged conspiracy. I therefore find that the *Century Maxim* defendants are entitled to discovery regarding the Attorney General's knowledge prior to October 22, 1983.

Plaintiff argues that the *Cedar Park* defendants are not entitled to *any* discovery regarding the Attorney General's knowledge because, although the complaint alleges a conspiracy commencing in 1978, the State is seeking damages only for the Jacob Javits Convention Center, for which a contract was awarded in May 1981—less than four years prior to the filing of the complaint (March 20, 1985). I note, however, that in light of the recent Supreme Court decision permitting a state to sue as an indirect purchaser where permitted by state law, *California v. Arc America Corp.*, —— U.S. ——, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989), the State has announced that it may seek damages under the Donnelly Act as an indirect purchaser for projects awarded prior to the Convention Center. *See* Plaintiff's June 26, 1989 Memorandum of Law at 11 n. 11; *cf. Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Accordingly, I reject the argument that the *Cedar Park* defendants have no right to discovery regarding the Attorney General's knowledge four years prior to the filing of the complaint. For the reasons stated with respect to the *Century Maxim* defendants, I also find that in light of plaintiff's claim for civil penalties, the *Cedar Park* defendants are entitled to discovery regarding the Attorney General's knowledge three years prior to the filing of that complaint.

Plaintiff contends that because the Attorney General's knowledge after March 20, 1982 is irrelevant to the *Cedar Park* action, any transcripts or documents after this date that are disclosed to the *Century Maxim* defendants should not be disclosed to the *Cedar Park* defendants. Plaintiff's June 26, 1989 Memorandum of Law at 2, 11–14. I agree with defendants that in light of the close relationship between the cases as a whole, this restriction would unnecessarily interfere with counsel's ability to prepare and present a joint defense. *See* Defendants' August 4, 1989 Memorandum of Law at 22–25. Accordingly, the disclosures directed in this Opinion shall be made to all defendants in *Cedar Park* and *Century Maxim*.

### PLAINTIFF'S ASSERTIONS OF PRIVILEGE

Defendants' discovery began on April 15, 1988, with the service of interrogatories and a document request by the *Cedar Park*

---

not discover its claims against the *Cedar Park* defendants until October 9, 1984; and that plaintiff did not discover its claims against the *Century Maxim* defendants until March 1985 (defendants Scopo, Century Maxim, G & G, S & A Structures), January 1986 (defendant Chattin), and March 1986 (defendants A & S Structures and A & S Concrete). Amended Complaints ¶¶ 45, 46.

defendants. Plaintiff responded on May 19, 1988. On May 25, 1988, the *Century Maxim* defendants served interrogatories and a document request, to which plaintiff responded on June 30, 1988. Plaintiff also submitted a supplemental response to defendants in both actions on August 24, 1988. Generally, the defendants' document requests seek all documents "concerning or supporting" the allegations of the complaints, as well as any records of photographic or electronic surveillance of the named defendants, and computations of damages. In its responses, plaintiff objected to producing certain documents on grounds of 1) "executive privilege"; 2) § 343 of the Donnelly Act; 3) attorney-client privilege; 4) workproduct rule (Fed. R.Civ.P. 26(b)(3)); and 5) N.Y.Crim.Proc.L. § 190.25. The withheld documents and the privileges asserted by plaintiff are set forth in plaintiff's "First Privilege List" and "Second Privilege List," which are annexed as exhibits to plaintiff's responses to defendants' requests.[2]

Claim of privilege were asserted for the following categories of documents:

(1) Grand Jury materials claimed to be privileged under N.Y.Crim.Proc.L. § 190.25. This claim of privilege is not currently in dispute because defendants do not seek discovery of Grand Jury materials at this time. *See* Defendants' December 5, 1988 Memorandum of Law at 8.

(2) Internal memoranda and "work papers" pertaining to the concrete investigation prepared by attorneys, investigators and other employees of the Attorney General, which have been withheld on an assertion of "executive privilege," § 343, attorney-client privilege and workproduct.

(3) Correspondence sent and/or received by employees of the Attorney General pertaining to the concrete investigation.

(4) Original subpoenas issued for documents and/or testimony during the concrete investigation. This claim of privilege is not in dispute because defendants do not seek production of these subpoenas.

(5) Transcripts of testimony taken under oath during the concrete investigation and claimed to be privileged pursuant to § 343. *See* Plaintiff's First Privilege List, Item 10.[3]

(6) Documents produced in response to subpoenas and claimed to be privileged under § 343. *See* Plaintiff's First Privilege List, Item 12. Plaintiff subsequently waived its asserted privilege with respect to these documents and has made them available for inspection by defendants.

## DISCUSSION

### *N.Y.Gen.Bus.L. § 343/Executive Privilege/Informer's Privilege*

Plaintiff asserts that all § 343 investigatory materials (including documents, attorney work papers, transcripts, internal memoranda and correspondence) are protected by an "executive privilege" or "public interest" privilege embodied in § 343 of the Donnelly Act.[4] *See* Plaintiff's November 14, 1988 Memorandum of Law at 8–10; Plaintiff's December 19, 1988 Reply Memorandum of Law at 19–23; Plaintiff's June 26, 1989 Memorandum of Law at 4–7.

Section 343 authorizes the Attorney General to conduct an "investigation" or "inquiry" into possible violations of the Donnelly Act and sets forth the procedures available to the Attorney General to compel

---

**2.** Plaintiff's First and Second Privilege Lists are also annexed to Defendants' December 5, 1988 Memorandum of Law in Opposition to Plaintiff's Motion to Preclude Discovery.

**3.** To the extent plaintiff now seeks to assert that the § 343 transcripts are protected by the workproduct rule (*see* Plaintiff's August 17, 1989 Reply Memorandum of Law at 11), I find that the Attorney General waived his right to claim such a privilege by failing to assert it in plaintiff's responses to defendants' discovery requests. *See* Local Civil Rule 46(e)(1).

**4.** Plaintiff has disclaimed any reliance on broader common law concepts of executive privilege, such as the "deliberative process" or "pre-decisional" privilege described in *Mobil Oil Corp. v. Department of Energy*, 520 F.Supp. 414 (N.D.N.Y.1981). *See* Plaintiff's December 19, 1988 Reply Memorandum of Law at 20; Transcript of April 19, 1989 conference (annexed as Exhibit E to Defendants' August 4, 1989 Memorandum of Law) at 115.

testimony and/or production of documents. Section 343 further provides that "[a]ny officer participating in such inquiry and any person examined as a witness upon such inquiry who shall disclose to any person other than the attorney general the name of any witness examined or any other information obtained upon such inquiry, except as so directed by the attorney general shall be guilty of a misdemeanor. Such inquiry may upon written authorization of the attorney general be made public." Plaintiff asserts that this so-called "silence directive" imposes on the Attorney General a requirement of "absolute confidentiality," and creates a statutory "executive" or "public interest" privilege for § 343 investigatory materials.

█ Assuming *arguendo* that § 343 creates a statutory state law privilege,[5] plaintiff acknowledges that such a privilege is not binding in a federal case presenting both federal and pendent state claims, in which the discovery sought by defendants is relevant to both claims. *See Von Bulow v. Von Bulow*, 811 F.2d 136, 141–42 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). Rather, plaintiff's assertion of privilege is "governed by the principles of the common law as they may be interpreted by the Courts of the United States in light of reason and experience." Federal Rule of Evidence 501. Plaintiff therefore relies upon the government's well-established common law privilege to withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officers—commonly referred to as the "informer's privilege."[6] *See, e.g., In re United States*, 565 F.2d 19, 22 (2d Cir.1977); *see generally 4 Moore's Federal Practice ¶ 26.61 [6.–2] (1989); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2019* at 155–58 (1970). Although most frequently asserted in criminal proceedings, the informer's privilege applies in civil litigation, and has been said to be stronger in civil cases than in criminal cases. *In re United States*, 565 F.2d 19, 22 (2d Cir. 1977). The privilege protects only the identity of the informer; the contents of his communication are not privileged unless they would tend to reveal his identity. *Roviaro v. United States*, 353 U.S. 53, 60, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *Westinghouse Electric Corp. v. City of Burlington*, 351 F.2d 762, 768 (D.C.Cir.1965); 8 C. Wright & A. Miller § 2019 at 157–58. Accordingly, the privilege disappears if either the informer or the government has disclosed the informer's identity. *Roviaro*, 353 U.S. at 60–61, 77 S.Ct. at 623; *Westinghouse*, 351 F.2d at 768; 8 C. Wright & A. Miller § 2019 at 157–58. The informer's privilege has no application where the informer reports purely lawful activity. *See, e.g., Alliance to End Repression v. Rochford*, 75 F.R.D. 441, 445 (N.D.Ill.1977); *United States v. Swift & Co.*, 24 F.R.D. 280, 284 (N.D.Ill.1959).

---

5. Plaintiff has cited no case holding that § 343 embodies a "privilege" that permits the Attorney General to withhold disclosure of § 343 materials in a civil action commenced as a result of the § 343 inquiry. Indeed, in *State v. Master Plumbers Ass'n of City of Syracuse*, 47 Misc.2d 187, 262 N.Y.S.2d 323 (Sup.Ct.1965), then Supreme Court Justice Richard J. Cardamone rejected plaintiff's position, observing that "[t]he argument advanced by the Attorney General that he is not subject to disclosure * * * because the Statute (General Business Law, § 343) prohibits him from releasing any information without obtaining his own permission appears to this Court to be specious." 47 Misc.2d at 195, 262 N.Y.S.2d at 330. It is also not clear that the "silence directive" itself is designed to protect informers. A virtually identical provision in the Martin Act, N.Y.Gen.Bus.L. § 352(5), has been held to be for the protection of the innocent subjects of the investigation. *See In re MacNamara*, 128 Misc. 84, 90, 218 N.Y.S. 57, 62–63 (Sup.Ct.), *aff'd*, 218 A.D. 822, 218 N.Y.S. 811 (1st Dep't 1926). I also note that § 343 has been declared unconstitutional insofar as it imposes a "silence directive" on witnesses examined by the Attorney General. *See LaRossa, Axenfeld & Mitchell v. Abrams*, 62 N.Y.2d 583, 586 n. 1, 479 N.Y.S.2d 181, 182 n. 1, 468 N.E.2d 19, 20 n. 1 (1984).

6. At the April 19, 1989 conference, plaintiff's counsel stated that the asserted privilege under § 343 is "tantamount to an informant's privilege." Tr. at 118; *see also* Plaintiff's November 14, 1988 Memorandum of Law at 8–11; Plaintiff's December 19, 1988 Reply Memorandum of Law at 20–21; Plaintiff's June 26, 1989 Memorandum of Law at 5–6.

An assertion of the informer's privilege requires the court to "balanc[e] the public interest in protecting the flow of information and assistance to the enforcement authorities against a party's right to prepare his case." 8 C. Wright & A. Miller § 2019 at 155; *see Cullen v. Margiotta*, 811 F.2d 698, 715–16 (2d Cir.) *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Han v. Food and Nutrition Service*, 580 F.Supp. 1564, 1568 (D.N.J.1984). The court must consider the litigant's need for the information, the breadth of the request, the availability of alternative means of obtaining the information, the potential for retaliation against the informer(s), and the assurances of confidentiality given to obtain the information. *See Cullen*, 811 F.2d at 715–16; *see also Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 354 (6th Cir.1984) (factors to be considered are other opportunities for discovery, the nature of the informer's role and the FBI's activities, the possibility of reprisal and the public interest in preserving the anonymity of informers).

The State's assertion of the informer's privilege has been troubling in a number of respects. First, despite the well-established obligation of the court to consider and balance the above factors on a case-by-case and document-by-document basis, the State initially provided *no* specific information regarding the "informers" in this case. For example, the State provided no information regarding whether any or all of the informers provided information pursuant to a promise of confidentiality, the nature of the information provided, or whether the identity of any informer had already been disclosed.

At a conference on April 19, 1989, I advised the Attorney General that the State's presentation was inadequate. I observed in particular that in a number of the cases cited by plaintiff,[7] the court specifically noted that the informant had provided information in reliance upon an explicit assurance of confidentiality. I therefore directed plaintiff to supplement the record to set forth the promises of confidentiality made to each witness whose transcript has been withheld. Transcript of August 19, 1989 conference (annexed as Exhibit E to Defendant's August 4, 1989 Memorandum of Law) at 119–27. Plaintiff's response, received on June 26, 1989, consisted solely of the sworn statement of plaintiff's counsel that "[t]o my knowledge each person or entity that participated in the Attorney General's investigation was advised that the investigation was confidential." Affidavit of Robert L. Hubbard, dated June 26, 1989, at ¶ 4. I subsequently advised the State that I found this response insufficient. On September 25, 1989, the Attorney General submitted for *in camera* inspection a list of the persons who testified in the § 343 investigation and the portion of each § 343 transcript purporting to reflect the assurances of confidentiality provided to each witness.

A review of the September 25, 1989 submission reflects that the June 26, 1989 sworn statement of Assistant Attorney General Hubbard seriously misrepresented the "assurances" given to those witnesses who testified in the concrete investigation. Not one of the witnesses was told that his testimony would not be disclosed. Indeed, with only a few exceptions, the subject of confidentiality was never even discussed. Of the thirty witnesses who testified, only four were told that the proceeding was "confidential." Moreover, in those four instances the issue of confidentiality arose solely in the context of an admonition that *the witness* (and his counsel) were prohibited from disclosing anything heard or learned during the examination without the prior written consent of the Attorney General. Notably, at least six other witnesses sought and obtained a *waiver* of the "silence directive" based upon a New York court decision holding § 343 unconstitutional insofar as it prohibited disclosure by a witness. *See supra* note 5. Moreover, based upon a comparison of the list of § 343 witnesses and plaintiff's description of persons with knowledge of the State's

---

7. *See e.g., Cullen v. Margiotta*, 811 F.2d 698, 714 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Brown v. Matias*, 102 F.R.D. 580, 582 (S.D.N.Y.1984); *Cirale v. 80 Pine Street Corp.*, 35 N.Y.2d 113, 117, 359 N.Y. S.2d 1, 4, 316 N.E.2d 301, 303 (1974).

allegations, it appears that the privilege has been waived or destroyed as to five of the persons who testified in the § 343 proceeding. Two of the witnesses are defendants in this case, who have joined in the motion to compel the State to disclose the § 343 transcripts.[8] Two others have already testified in *Salerno II*, and another, who has since died, brought a related private antitrust action against some of the defendants in these cases.[9] Whether the identity of other witnesses has been disclosed—for example, in litigation over § 343 subpoenas—cannot be determined from the information supplied by the Attorney General.

In light of the State's failure to provide adequate support for its assertion of privilege, its failure to address specifically the relevant factors identified in the case law, and, most importantly, the Attorney General's affirmative misrepresentation of the facts regarding the crucial factor of assurances of confidentiality, the State's application to withhold the disputed documents on the basis of § 343 could properly be rejected in its entirety without further analysis. *See* Defendants' August 4, 1989 Memorandum of Law at 2–9. On the other hand, I am reluctant to risk possible prejudice to the public on account of the Attorney General's failure to substantiate his claims of privilege. Accordingly, rulings will be made at this time only with respect to those witnesses as to whom sufficient information exists to weigh the relevant factors, and the State will be required to submit additional information regarding the other witnesses.

I find that the defendants' need to meet the State's allegations of fraudulent concealment outweighs the public interest in preserving the anonymity of those witnesses who appeared prior to October 22, 1983. There is clearly no reasonable alternative

discovery available to defendants regarding the crucial issue of what the Attorney General knew, or should with due diligence have learned, prior to the relevant statute of limitations periods for damages and civil penalties. As noted above, none of these witnesses was given explicit assurances of confidentiality to obtain their information. There is little, if any, likelihood of retaliation against the witnesses who testified prior to October 22, 1983, since, apart from defendant Chattin and the deceased Mr. Palmieri (as to whom the privilege has also been waived) none of these witnesses has been identified by the State as a person who has provided information supportive of its allegations.

I further find that the privilege has been waived as to those witnesses who are defendants in these actions, who testified in *Salerno II*, and who have brought related private antitrust actions. Moreover, since each of these witnesses has been identified by the Attorney General as a person with knowledge of the State's allegations, and is therefore a likely witness for plaintiff,[10] and since none of these witnesses was told that his testimony would be "confidential," disclosure would be warranted even in the absence of waiver.

The State is directed to produce the above described transcripts of these witnesses to defendants no later than November 27, 1989. The State is further directed to submit to the court no later than November 27, 1989, the entire testimony of all other witnesses for *in camera* review, as well as a statement regarding whether the identity of any witness has previously been disclosed by the State, the witness, or others.

Finally, with respect to the § 343 documents that the Attorney General has agreed to produce, plaintiff is directed to

---

8. Indeed, the State itself has publicly revealed that defendant Chattin testified in the § 343 investigation. *See* Affidavit of Assistant Attorney General Alice McInerney (submitted in *Salerno II*), annexed as Exhibit C to the June 26, 1989 affidavit of Assistant Attorney General Hubbard.

9. *Cf. Westinghouse Electric Corp. v. City of Burlington,* 351 F.2d 762, 770–71 (D.C.Cir.1965) (persons providing information to the Justice

Department who subsequently became plaintiffs in antitrust case waived informer's privilege).

10. A number of courts have held that the names of the government's trial witnesses and their prior statements must be provided at some point in the litigation. *See, e.g., United States v. Maryland Shipbuilding & Drydock Co.,* 51 F.R.D. 159, 161 (D.Md.1970).

identify no later than November 27, 1989, the date of receipt for all documents received prior to October 22, 1983.[11]

### Workproduct

■ Plaintiff has withheld all correspondence, memoranda and attorney "workpapers" pertaining to the § 343 investigation as workproduct or trial preparation materials under Fed.R.Civ.P. 26(b)(3). Defendants contend that plaintiff has not met its burden of showing that these documents were "prepared in anticipation of litigation." Fed.R.Civ.P. 26(b)(3). Defendants assert that such a claim is "untenable" with respect to documents prepared prior to June 1983 in light of the allegation in the complaints that plaintiff first learned on June 16, 1983, that claims "might exist." Defendants argue that "if the plaintiff lacked knowledge that it even had a claim against the defendants until June 16, 1983, the vast bulk of materials which were generated prior to that date could hardly be said to have been generated 'in pending or impending litigation.'" Defendants' December 5, 1988 Memorandum of Law at 15. I find it unnecessary to reach this issue because I agree with defendants that even if the withheld documents are found to be trial preparation materials, defendants have "substantial need" of the materials in order to meet plaintiff's claims of fraudulent concealment and are unable to obtain the substantial equivalent of these materials by other means. Fed.R.Civ.P. 26(b)(3).

As noted above, plaintiff has placed in issue the extent of its knowledge and its due diligence prior to March 20, 1982 in *Cedar Park* and prior to October 22, 1983 in *Century Maxim*. The best and virtually exclusive source of this information is the documents received and prepared by the Attorney General prior to these dates. Ac-

cordingly, plaintiff is directed to produce no later than November 27, 1989, all correspondence, memoranda or workpapers in its possession prepared or received prior to October 22, 1983. To date, plaintiff has submitted to defendants an itemized list of withheld memoranda through February 1985. Plaintiff has submitted *in camera* a list of correspondence prior to October 22, 1986. Neither the defendants nor the court has received an itemized list of workpapers. Plaintiff is directed to provide to defendants a list of all correspondence prior to October 22, 1983 and to prepare and submit to the court and defendants an itemized list of workpapers for the period prior to October 22, 1983.

Pursuant to Fed.R.Civ.P. 26(b)(3), plaintiff may at this time, and without prejudice to a further application by defendants, withhold or redact those portions of these documents that contain the "mental impressions, conclusions, opinions, or legal theories" of the Attorney General. Plaintiff is directed to submit for *in camera* review by the court copies of any documents withheld on this basis, as well as copies of any redacted document highlighting the redactions.[12] Correspondence, memoranda and workpapers prepared or received after October 22, 1983 may properly be withheld as workproduct for which defendants have not demonstrated substantial need.[13]

Any objections to this Opinion and Order must be submitted to Judge Sand no later than November 28, 1989. Fed.R.Civ.P. 72(a).

SO ORDERED.

---

**11.** Plaintiff's assertion of a § 343/informer's privilege for correspondence, internal memoranda and attorney workpapers is addressed *infra* at note 12.

**12.** Plaintiff has also asserted the § 343/informer's privilege with respect to correspondence, internal memoranda and attorney workpapers. To the extent disclosure of these documents as directed in this Opinion and Order would reveal the identity of any informer other than those who testified in the § 343 in-

vestigation, or those whose identity has already been revealed, plaintiff may make a supplemental presentation no later than November 27, 1989.

**13.** Plaintiff has claimed attorney-client privilege for only one document (a memorandum dated April 18, 1984), which I find has properly been withheld as workproduct. It is therefore unnecessary to reach the question of attorney-client privilege.