[623 NYS2d 228]

Nona Brathwaite, Respondent, v State of New York, Appellant. (Claim No. 80493.)

First Department, March 2, 1995

## APPEARANCES OF COUNSEL

*Murray B. Schneps* of counsel, Riverhead *(Scheinberg, Schneps, DePetris & DePetris,* attorneys), for respondent.

*Michael S. Buskus* of counsel, Albany *(Peter H. Schiff* on the brief; *Dennis C. Vacco, Attorney-General,* attorney), for appellant.

## OPINION OF THE COURT

SULLIVAN, J.

Claimant Nona Brathwaite was a resident of the Willowbrook Developmental Center, a State-operated residential institution for the mentally retarded, from February 17, 1956 until she was placed in another facility on June 29, 1979. She is now an outpatient.

In this Court of Claims action, claimant alleges that she was not mentally retarded, as reputed, and seeks to recover damages as a result of her wrongful admission to and retention at Willowbrook and for injuries—physical, mental, emotional and psychological—sustained as a result of such admission and retention while a resident and continuing to date. On this appeal, the State challenges an order requiring it to comply with claimant's document discovery demands unless it either provides a sworn statement that the requested materials do not exist or asserts that such materials are privileged, provided that each document claimed to be privileged is identified and the nature of the privilege specified and supported.

After joinder of issue, claimant served a notice of discovery and inspection seeking (1) copies of all records maintained by the State regarding claimant's care and treatment from the

date of her admission to the present time, (2) all Federal and State survey reports regarding the review of services and conditions at Willowbrook during the period of claimant's retention as well as (3) reports of experts recommended by the State to survey the same for that period, (4) all Developmental Disabilities Information Survey computer print-outs for claimant from her admission to the present time, and (5) all reports of the State of New York Commission on Quality of Care for the Mentally Disabled (Commission) relating to incidents and reviews at Willowbrook during the period of claimant's retention. When the State failed to respond after eight months, claimant moved for an order striking the answer and precluding it from presenting any evidence with regard to the documents sought or, alternatively, directing it to produce the same.

In opposition, the State asserted, *inter alia,* that a three-volume file, which comprised all of claimant's available records, had been forwarded to a commercial copying center and was available for copying and, at claimant's expense, shipping; that the State and Federal survey records, which, under applicable regulations are not required to be kept for more than 10 years and three years, respectively, had been destroyed; that the demand for "all reports of experts" was overly broad and lacked specificity and that it was burdensome and "may well be" privileged and confidential and that the demand for reports of the Commission relating to Willowbrook during the relevant period contravened various common-law and statutory privileges, including Education Law § 6527, Public Health Law §§ 2805-*l* and 2805-m, Mental Hygiene Law §§ 29.29 and 45.01 *et seq.,* especially section 45.09, and the common-law "Executive" privilege set forth in *Cirale v 80 Pine St. Corp.* (35 NY2d 113).

■ The Court of Claims, noting that the State did not search for records at the unnamed facility to which claimant was transferred in 1979 or in the files in the Attorney-General's office concerning an unrelated Federal case which had been settled, ordered the State to conduct a more thorough search and to produce items Nos. 1 through 4, subject, as noted, to the availability of the document sought and the assertion of a privilege. In a supplemental opinion, the court addressed the question of the asserted privilege with respect to the reports of the Commission and held that the privilege against disclosure found in Education Law § 6527 (3) applied only to reports generated by the investigated facility, not to the Commission's

reports. Thus, the court held, the reports prepared by the Commission were not exempt from discovery. This was error.

The Legislature, in Education Law § 6527 (3) and Mental Hygiene Law § 29.29, has created a statutory exception to the rules of discovery provided in CPLR article 31 with respect to, *inter alia,* a medical or a quality assurance review function, including those performed by the Commission. Education Law § 6527 (3), insofar as is relevant, provides, "Neither the proceedings nor the records relating to performance of a medical or a quality assurance review function * * * nor any report required by the department of health pursuant to section twenty-eight hundred five-*l* of the public health law described herein, including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law, shall be subject to disclosure under article thirty-one of the civil practice law and rules except as hereinafter provided or as provided by any other provision of law." Mental Hygiene Law § 29.29 provides, in part, "Incident reports shall * * * mean reports of accidents and injuries affecting patient health and welfare at such departmental facilities [of the Offices of Mental Health and Mental Retardation and Developmental Disabilities]." Mental Hygiene Law § 29.29 also specifically requires each facility to make and forward to the Commission a copy of an incident report in the case of suicide, attempted suicide or patient injury. Clearly, the interplay of these two statutes places the incident report required by Mental Hygiene Law § 29.29 beyond the scope of discovery.

The only two reported decisions dealing directly with this issue are in conflict. In the earlier one, *Elmer v State of New York* (179 AD2d 1000), which involved an allegation of sexual abuse by an employee, the Fourth Department held that the records of the Commission with respect to its investigation into the various allegations of child and sexual abuse at Western New York Children's Psychiatric Center, specifically, the redacted transcripts of the Commission's interviews of the resident children and unredacted transcripts of staff interviews, were not privileged under Education Law § 6527 (3) because "they did not result from an internal medical or quality assurance review proceeding." *(Supra,* at 1001.) In our view, this determination reflects a misreading of the relevant statutes, which, when read together, specifically exempt from disclosure "reports of accidents and injuries affecting patient health and welfare." The records also appear to relate to

performance of a quality assurance review function, also exempt from disclosure under Education Law § 6527 (3).

Five months after *Elmer* was decided, the Third Department, in *Smith v State of New York* (181 AD2d 227), arrived at a different result, concluding that incident reports, accident reports, investigation reports and documents related to the Commission's investigation of a patient's fall from a fourth floor window were protected from disclosure pursuant to Education Law § 6527 (3). In so ruling, the Court noted the important public policy considerations which underlie the statutory privilege, "[T]he interest of justice more appropriately lies in the need for confidentiality in order to promote frank and honest discussion and documentation of incidents such as that presented here, which could well implicate the care and treatment of patients generally." *(Supra,* at 231.)

We find ourselves in accord with the Third Department's view as to the scope of the statutory privilege and the rationale underlying it and hold that the investigative reports of the Commission are exempt from disclosure. If an investigative agency is to fulfill its mission, it is absolutely essential that it have unimpeded access to the information available. If confidentiality is not enforced, the investigator's inquiries will be met by the muted tone and tepid comment rather than the blunt exchange and candid response. Nor is the confidentiality envisioned by the statute protected, as the Court of Claims held, by limiting its reach to the report of the investigated facility and excluding therefrom the Commission's report. The publication of either report is enough to chill the willingness to speak.

In *Zion v New York Hosp.* (183 AD2d 386, *appeal withdrawn* 81 NY2d 881), in a similar situation, we exempted from disclosure under Education Law § 6527 (3) documents in the investigative file of the Joint Commission on the Accreditation of Hospitals. We noted in that case that while the disposition we reached might present difficulties for an individual plaintiff, this consideration was outweighed by the salutary benefits conferred upon the general public by encouraging open and candid discussion.

In analogous situations, courts have sustained the public interest privilege to exempt from disclosure similar investigative materials generated by a variety of agencies with functions akin to that of the Commission. *(See, e.g., Martin A. v Gross,* 194 AD2d 195, 201-205 [internal report of municipal

agency which investigated accident not discoverable in action alleging negligence in foster care placement]; *Lowrance v State of New York,* 185 AD2d 268 [investigative notes, interviews, conclusions and recommendations contained in Inspector General's files held privileged]; *Brady v Ottaway Newspapers,* 97 AD2d 451, 452, *affd* 63 NY2d 1031 [confidential file of State Police with respect to investigation into municipal police corruption not discoverable in defamation action]; *Jones v State of New York,* 58 AD2d 736 [McKay Commission files of investigation into Attica prison uprising exempt from disclosure]; *Matter of Langert v Tenney,* 5 AD2d 586, 588-589, *appeal dismissed* 5 NY2d 875 [file of Commissioner of Investigation of the City of New York revealing the name of the informant and the content of the informant's communication not discoverable in defamation action].)

The State also argues that the entire matter ought to be remanded to afford it the further opportunity to respond to claimant's discovery requests in light of a recent amendment to the CPLR's discovery provisions. CPLR 3120, the notice of discovery and production for inspection provision, was amended (L 1993, ch 98, § 8), effective January 1, 1994, subsequent to the entry of the order on appeal, to delete from subdivision (a) the phrases "specifically" and "specified with reasonable particularity", thereby eliminating the requirement that a party seeking discovery specify document requests with particularity and specificity *(see,* CPLR 3120 [a] [1] [i]; *see also, Rios v Donovan,* 21 AD2d 409, 413). Prior to the amendment, *Rios* had been extended so that, "lacking knowledge of the existence of specific documents, the party seeking discovery and inspection pursuant to CPLR 3120, should initially make proper use of the deposition and related procedures provided for in the CPLR * * * to ascertain the existence of such documents in order that they may be designated with specificity in a CPLR 3120 notice." *(King v Morris,* 57 AD2d 530.) Indeed, the memorandum in support of the amendment indicated an intent to eliminate the *Rios* and *King* requirement that before CPLR 3120 be resorted to a deposition first be undertaken to establish the existence and identity of the requested documents. *(See,* Mem of Off of Ct Admin, 1993 McKinney's Session Laws of NY, at 3168.)

■ Since the amendment to CPLR 3120 is procedural and accordingly remedial in nature it should, as the State concedes, be applied retroactively. (McKinney's Cons Laws of NY, Book 1, Statutes § 55.) It should be noted that neither the

Court of Claims in its decision nor counsel for either side made any reference to the amendment to CPLR 3120. At the time the State submitted its opposing papers, the amendment had not been enacted and *Rios* (21 AD2d 409, *supra)* and *King* (57 AD2d 530, *supra)* furnished justification for resisting disclosure of a type which involved a search for generically described documents spanning a period of 37 years. It is also worth noting that the State repeatedly offered to make its employees available for deposition. The State, however, raised a lack of specificity argument only with respect to item No. 3 of the notice of discovery, which sought the reports of experts recommended by it to survey conditions at Willowbrook from February 17, 1956 to June 29, 1979, a demand, which, in our view, is sufficiently specific, albeit somewhat cumbersome.

The State's position is that it justifiably relied on the *Rios* and *King* doctrines in resisting disclosure and should now be afforded an opportunity to respond to the discovery request under the amended statute. Since, however, under the order appealed from the State may explain its inability to locate the document(s) sought or assert a privilege with respect thereto we believe that a proper balance has been struck between claimant's right to discovery and the burden imposed by the assertion of such right. We therefore see no need for a remand for a further response to the demand.

Accordingly, the order of the Court of Claims of the State of New York (Gerard M. Weisberg, J.), entered October 5, 1993, should be modified, on the law, to vacate item No. 5 from the notice of discovery and inspection and, except as thus modified, affirmed, without costs or disbursements.

MURPHY, P. J., KUPFERMAN, ASCH and TOM, JJ., concur.

Order, Court of Claims of the State of New York, entered October 5, 1993, modified, on the law, to vacate item No. 5 from the notice of discovery and inspection and, except as thus modified, affirmed, without costs or disbursements.