OPINION OF THE COURT
Lorraine S. Miller, J.
Plaintiff, Ellen Feig (Feig), 30 years of age, was admitted to Lenox Hill Hospital (Hospital) on April 18, 1990 for a gastrointestinal problem, pain and dehydration. Two days thereafter, Roger Kapp (Kapp) pretending to be a "Dr. Adler” directed the Hospital’s nursing station, by telephone, to administer soap enemas to plaintiff in preparation for a colonoscopy and other procedures. He telephoned her room several times, discussed the enemas, laxatives and her bowel conditions with her but never personally appeared. Upon her discharge he called her on her home unlisted number again discussing the same personal conditions. Ultimately, after investigation, Kapp was charged with two counts of criminal impersonation. As part of the plea negotiations and allocution he admitted that "at his direction” enemas were performed upon plaintiff. He was sentenced to an adjournment in contemplation of dismissal. On August 8, 1992, he committed suicide. His estate has been substituted herein as a codefendant with the Hospital and a physician, Elizabeth A. Goessel.
Plaintiffs are both attorneys. They had brought the within action on October 24, 1990 for negligence, assault, malpractice, battery, intentional infliction of both physical and emotional harm, fraudulent impersonation, illegal practice of medicine, loss of services and other claims due to wrongful conduct of defendants and/or their medical and nursing staff in following unauthorized orders from a nonphysician. They charge the defendants with causing rectal bleeding, severe rectal and *45 stomach pain, dehydration, anemia and emotional problems, including depression.
Justice Beverly Cohen previously (Jan. 4, 1994) denied summary judgment motions on the basis, inter alia, that Kapp’s admission of wrongdoing did not release the codefendants of their own negligence, if any, and that issues of fact remain as to what procedures were actually performed, by the other defendants at the direction of "Dr. Adler”.
On September 18, 1995, upon assignment of the case to this court, a short discovery schedule of this 1991 case was established for the examination of both plaintiffs, the Hospital, the executrix of the Kapp estate, plaintiffs physician and the Hospital’s director of security.
On October 11, 1995, plaintiffs served a subpoena duces tepum upon Kroll Associates (Kroll), a private agency, which had been engaged to conduct an investigation regarding the incident. The subpoena called for the production by Kroll of "all reports, memos, correspondence, notes, evidences and writings which you have in your possession, custody or power concerning the investigation conducted for Lenox Hill Hospital regarding the conduct of Roger Kapp, which occurred in or about April 1990”. The Hospital now moves to quash the subpoena pursuant to CPLR 2304 alleging that any materials that may exist are privileged under Education Law § 6527 and CPLR 3101 (c) and (d). Kroll did not furnish a written report to the Hospital but was paid $38,995 which the Kapp estate agreed to reimburse.

Education Law § 6527

The Hospital contends that the Kroll investigation constituted a quality assurance review function designed by the Education Law (and Public Health Law § 2805-j) to identify problem areas in patient care and as such is confidential. It is clear that all of the five subdivisions of Education Law § 6527 pertain to peer review, medical, dental, podiatric and optometric procedures, and resolution of disputes with patients regarding the same. The Hospital’s contention would stretch that to embrace nonmedical areas. This court does not agree that security (or the lack or breach thereof) was within legislative contemplation in enacting Education Law § 6527 or Public Health Law § 2805-j. Security can be equated with plant maintenance, billing functions, and routine housekeeping matters, all of which may impact upon the patient but do not fit into the professional categories enumerated (see, Matter of Kristen *46 K. v Children’s Hosp., 204 AD2d 1009 [4th Dept 1994], lv denied 1994 WL 531090 [4th Dept 1994]). Accordingly, no privilege should attach on the basis of Education Law § 6527 (3).

CPLR 3101 (c) Attorney’s Work Product

The Hospital’s contention that an absolute immunity attaches to the contents of the Kroll file as "Attorney’s work product” under CPLR 3101 (c) also must fail. The contents were not prepared by the Hospital attorney, as an attorney, but by laypersons at Kroll. There is no claim that the file contains privileged communications between the attorney and the Hospital-client under CPLR 3101 (b). There is no allegation that interviews by defendants’ lawyers, their mental impressions, personal beliefs, case evaluation or trial strategy are contained therein which would render them absolutely exempt (Corcoran v Peat, Marwick, Mitchell & Co., 151 AD2d 443 [1st Dept 1989]; Beasock v Dioguardi Enter., 117 AD2d 1016 [4th Dept 1986]; Lane Bryant, Inc. v Cohen, 86 AD2d 805 [1st Dept 1982]). CPLR 3101 (c) is, therefore, inapplicable.

CPLR 3101 (d)

A different conclusion must be reached, however, with regard to the Hospital’s contention that the Kroll investigation was performed in anticipation of litigation and is therefore exempt from discovery. It was clear from the April 20th interview of plaintiff, Ellen Feig, an attorney, by the Hospital’s director of security, Eugene Flynn (Flynn), that litigation was contemplated. The very nature of this incident and the parties involved made it quite probable. While Flynn had a general security function and had promptly alerted the New York City Police Department, fleshing out the details for a possible civil action was thought to be more within the ambit of a professional investigative agency. The moving papers herein contain reports detailing what Flynn and other staff did with regard to general security aspects. Kroll’s function was separate and distinct. Thus, plaintiff’s contention that Kroll’s retention was for a "mixed purpose” is incorrect. Kroll had nothing to do with peer review or any of the medical professions spelled out in the legislation.
Plaintiff further alleges that the material sought is discoverable for it was prepared by Kroll in the regular internal operation of the Hospital’s business. (Kandel v Tocher, 22 AD2d 513 [1st Dept 1965].) While the detailed reports openly filed herein as part of this motion can be so categorized, the *47 work done by Kroll cannot. The examination of Flynn, heretofore scheduled by the court, undoubtedly should have yielded the information plaintiff seeks herein regarding Hospital security measures, generally, without impinging upon exempt matters prepared in anticipation of the litigation. Instead of expending their efforts and the court’s time on motions such as this, plaintiff should complete the discovery previously agreed upon with the court on September 18, 1995. Thereafter, plaintiff may, if so advised, request an in camera inspection of the Kroll file. (Haire v Long Is. R. R. Co., 29 AD2d 553 [2d Dept 1967].)
Plaintiff also contends that immunity that might otherwise attach to the contents of Kroll’s file must give way because the material cannot be secured elsewhere due to Kapp’s suicide. (See, Baczmaga v Reynolds, 44 Misc 2d 997 [Sup Ct, Niagara County 1965].) This allegation is based on pure speculation for there is no recitation of what might repose in the file that cannot be secured elsewhere or that there is hardship. While plaintiff is hopeful that the file might contain something of use, such hopes cannot justify the proverbial "fishing expedition”. Moreover, since the reports filed with this motion indicate that a nurse gave the mythical "Dr. Adler” the plaintiff’s room number and phone number, etc., the information is readily available in those reports without invading the Kroll file at this time.
The subpoena duces tecum calls for production of "all reports, memos, correspondence, notes, evidences and writings”. The defendant objects that it is overly broad because of the unspecific language. The court agrees that employing such catch-all words designed to be all-inclusive goes beyond even the ever-broadening rules of discovery that some think are desirable. The reality is that motion practice seeking compliance has trebled because such verbiage has been used as an instrument to delay the filing of notes of issue. Additionally, the breadth of such language in the demand makes no exception for privileged communications in the file (see, Grotallio v Soft Drink Leasing Corp., 97 AD2d 383 [1st Dept 1983]). Accordingly, for that reason as well as CPLR 3101 (d) the motion to quash the subpoena duces tecum is granted.
Finally, it should be noted that plaintiff’s objection that defendants failed to request withdrawal of the subpoena before bringing on this motion to quash is without merit. CPLR 2304 does not prescribe any particular method or writing. An oral request as occurred here is sufficient, particularly when the *48 time is short for bringing on such a motion prior to the return date of the subpoena. In most instances such a request, written or oral, will be futile in any event, and makes little sense. (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2304:4, at 276-277.)