OPINION OF THE COURT
Alan C. Marin, J.
Claimant, then a 14-year-old patient at Bronx Children’s Psychiatric Center, seeks damages for an alleged sexual assault by an employee (G) of the Center on or about August 13, 1993 and for other possible similar incidents.
At a May 21, 1997 preliminary conference to set a discovery schedule, the defendant agreed to provide the claimant with the investigation file relating to the incident and the employee records of G, subject to any claims of privilege.
On July 8, this material was delivered to the court. The cover letter, copy to claimant, requested an in camera inspection, arguing that: (i) employee records are privileged under Public Officers Law § 96 and (ii) the investigative file is privileged from CPLR article 31 disclosure by section 6527 (3) of the Education Law. Claimant responded that such information is discoverable and asked for an opportunity to be heard before any decision would be rendered. A conference on the disclosure issues was conducted August 1.
I
Subdivision (1) of section 96 of the Personal Privacy Protection Law (Public Officers Law § 91 et seq.) limits the disclosure of any record or personal information without the request or consent of the affected individual. The Personal Privacy Protection Law is intended to prevent the disclosure of documents constituting an unwarranted invasion of privacy (Reale v Kiepper, 204 AD2d 72, 74 [1st Dept 1994], lv denied 84 NY2d 813 *673 [1995]) arising from sophisticated computer-linked data files which do not serve any legitimate governmental purpose (Matter of Spargo v New York State Commn. on Govt. Integrity, 140 AD2d 26, 30 [3d Dept], lv denied 72 NY2d 809 [1988]). There are numerous legitimate uses set forth in the Personal Privacy Protection Law, including pursuant to a court order.[1]
Upon review of G’s personnel file, there are no grounds to exclude any document or redact any name or reference, except as hereinafter provided.
It is ordered therefore that, within 30 days after this amended order is filed, the personnel file of G consisting of 74 pages be made available to claimant for use in this matter subject to the following: (i) the name of any patient other than Ms. Feliciano shall be redacted (this occurs in at least one place, page 3 of the December 2, 1993 letter to G from the Center’s executive director); and (ii) no data search may be undertaken using G’s Social Security or Department of Motor Vehicle identification numbers, or other similar means, without authorization by the court.
II
Subdivision (3) of Education Law § 6527 makes records of the proceedings of a hospital review committee exempt from CPLR article 31 disclosure and shields committee participants from testifying or being subject to a lawsuit for damages. This section and parallel provisions of the Public Health Law (§§ 2805-/, 2805-m) implement the public policy that a climate free from the threat of litigation be established in order to improve future quality of care. The policy is analogous to that which *674 underlies the inadmissibility of subsequent repairs or other remedial action as proof of prior tortious acts.[2]
The Fourth Department has ruled that hospital confidentiality laws do not block the disclosure of the investigative report on the sexual assault of a minor patient prepared by Children’s Hospital of Buffalo:
“In our view, that section [Public Health Law § 28054 (2) (a)] refers only to incidents involving care and treatment. The incident involving plaintiffs minor daughter did not relate to her care and treatment. To extend the confidentiality provisions of Public Health Law § 2805-m to cases such as this would extend its protection well beyond the intent of the Legislature.
“The Hospital’s reliance upon Education Law § 6527 (3) is likewise misplaced because that section provides confidentiality for information relative to medical review functions”. (Matter of Kristen K. v Children’s Hosp., 204 AD2d 1009, 1010 [4th Dept 1994].)
Subdivision (3) of Education Law § 6527 was amended in 1986 to insert two references to the Mental Hygiene Law in several places: “a hospital as defined in subdivision ten of section 1.03” and “including the investigation of an incident reported pursuant to section 29.29”. (L 1986, ch 427.) While these changes, especially the latter one, are cast with more specificity than the then existing subdivision (3), the language is not freestanding, but clarifies the scope of a “medical or quality assurance review function”. The Memorandum of the Office of Mental Health accompanying the legislation provided in part:
“[I]t is not clear [under existing law] whether the term ‘hospital’ would also include a psychiatric hospital, as defined in the Mental Hygiene Law * * *
“The [existing] discovery exclusion enhances the objectivity of the review process and assures that medical review committees may frankly and objectively analyze the quality of health services rendered in the hospital * * *
“There appears to be no reason why these protections of the quality assurance and peer review process should not also be applied to psychiatric hospitals. Such protections would help assure a frank appraisal of the practices and procedures of psychiatric hospitals * * *
“It would also assure that psychiatric hospitals may learn from past mistakes and use the information obtained from *675 such incidents to improve the quality of care in their facilities.” (1986 McKinney’s Session Laws of NY, at 2939-2940.)
The rules of the Office of Mental Health applicable to “Incident Management” similarly emphasize the bigger picture (14 NYCRR part 524, especially 524.1, 524.2 [c]; 524.8 [a]).
However, in Smith v State of New York (181 AD2d 227, 230 [1992]), the Third Department analyzed the 1986 amendment as addressing a “separate situation” for documents generated by an investigation under Mental Hygiene Law § 29.29, therefore requiring the same level of confidentiality as quality assurance functions and medical peer review programs intended to prevent malpractice. That analysis more appropriately applies only to the first unnumbered paragraph of subdivision (3) of Education Law § 6527, which insulates persons serving on committees from individual liability for damages. The second unnumbered paragraph simply clarifies for disclosure purposes that a peer review or quality assurance committee includes investigations performed under the authority of section 29.29. The statutory scheme here is quite rational—the public policy of frank and objective peer renew is accomplished by sweeping the net widely enough to protect from lawsuit any individual arguably involved in a section 29.29 incident report. But the policy of disclosing documents which are material and necessary under CPLR article 31 is better served by narrowing the scope of section 29.29.
The instant case is more properly governed by Feig v Lenox Hill Hosp. (167 Misc 2d 42, 45-46 [Sup Ct, NY County 1995]), which ordered disclosure of an investigation that was essentially part of a security function, than by Brathwaite v State of New York (208 AD2d 231 [1st Dept 1995]), which precluded disclosure of material that was in the nature of quality-of-care review and oversight.
Accordingly, it is ordered that, within 30 days after this amended order is filed, the investigation file, which consists of two incident reports of two pages each, a three-page safety department report and the investigative report which is 14 pages long,[3] be disclosed to claimant for use in this matter, *676 provided however that the names of patients other than Ms. Feliciano be redacted.

. Paragraphs (b) through (n) of Public Officers Law § 96 (1) enumerate these purposes. Court orders are covered by section 96 (1) (k), as well as section 95 (8). Note that subdivision (2) of section 96 provides that nothing in subdivision (1) of the section requires the disclosure of medical or mental disability patient records. Part (i) of the privileges asserted by the defendant (supra, at 672) relates only to G’s employee records; moreover, subdivision (2) of section 96 is clearly intended to ensure that existing statutory patient confidentiality protections such as that found in Mental Hygiene Law § 33.13 are not weakened.
While the fact patterns are different, on permitting disclosure pursuant to a valid purpose, see Matter of Lochner v Surles (149 Misc 2d 243 [Sup Ct, Albany County 1990]); 1990 Opns Atty Gen 29; and Reale (supra), although in Lochner and Reale some documents were withheld as litigation or law enforcement material.

. Richardson, Evidence § 168 (Prince 10th ed).

. Of these documents, only the 14-page investigative report may qualify as a Mental Hygiene Law § 29.29 incident report. Moreover, while the preliminary conference order of May 21, 1997 was drafted by the parties to cover the “subject incident and prior similar incidents” (emphasis added), for our purposes, discovery shall obtain for similar incidents that occurred prior *676 to the subject incident or that were reported relatively contemporaneously thereto.