*695 OPINION OF THE COURT
Susan Phillips Read, J.
Claimant Angela Finnegan (claimant) is the mother of decedent, Joseph Finnegan, and administratrix of his estate. From approximately July 1980 through March 1, 1990, decedent, who was severely retarded, was a patient at the Bernard M. Fineson Developmental Center (BFDC), a facility owned and operated by defendant State of New York (defendant or the State) (see, Mental Hygiene Law § 13.17 [b]). Thereafter, decedent was transferred to another State facility, Wilton Developmental Center, where he died on June 23, 1990.
According to claimant, decedent suffered numerous injuries while in defendant’s care. Three of those injuries, occurring in September 1989 and November 1989, form the basis for this claim.
Much discovery has already taken place in this matter, including the deposition of witnesses specifically designated by claimant; however, claimant still seeks incident reports from BFDC relating to decedent and to other patients and has filed this motion to compel production of those reports.[1] Claimant asserts that these reports, relating to various injuries received by decedent, “are crucial to Claimant’s ability to identify witnesses and establish the accurate facts and circumstances surrounding [decedent’s] injuries. Without the incident reports, Claimant will not be able to identify any witnesses with personal knowledge of what happened to [decedent] and will be severely prejudiced in her ability to prosecute the action” (affirmation of Karl Brodzansky, dated Sept. 14, 1998, filed Sept. 21, 1998 12). Claimant alleges that the reports will es-
tablish that defendant had notice of decedent’s propensity to suffer injury.
Defendant’s cross motion alleges that the incident reports are privileged under Education Law § 6527 (3), and seeks a protective order pursuant to CPLR 3103 prohibiting disclosure of the reports. Claimant argues that the privilege does not apply because the incident reports were generated only for “security purposes” and that, in any event, they did not result in *696 any remedial measures being taken. Defendant offers deposition testimony from Essa Jallad, who indicates that different levels of injury were reported differently, and that the Incident Review Committee had to be notified to investigate certain levels of injury. Jallad characterized one of the reports at issue as “not minor” which, presumably, prompted some level of investigation (affirmation of Janet Polstein in support of cross motion and in opposition to claimant’s motion to compel, dated Oct. 5, 1998, filed Oct. 9, 1998 [Polstein Aif.], exhibit D).
The issue presented in the motion and cross motion is whether the incident reports sought by claimant are privileged under Education Law § 6527 (3). Since the parties’ arguments fall on either side of a split between Departments of the Appellate Division, the court first reviews the relevant statutes and case law.
RELEVANT STATUTORY PROVISIONS
Education Law § 6527 (3) provides, in relevant part, “Neither the proceedings * * * nor any report required by the department of health pursuant to section twenty-eight hundred five-1 of the public health law described herein, including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law, shall be subject to disclosure under article thirty-one of the civil practice law and rules except as hereinafter provided or as provided by any other provision of law. No person in attendance at a meeting when * * * an incident reporting function described herein was performed, including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law, shall be required to testify as to what transpired thereat.” (Emphasis supplied.)
Public Health Law § 2805-Í requires certain hospitals to investigate and report on incidents relating to: patients’ deaths or injury not resulting from proper care and treatment, fires that disrupt patient care or cause harm, equipment malfunctions during diagnosis or treatment which could adversely affect patients or hospital personnel, poisoning occurring within the hospital, strikes by hospital staff, disasters or emergency situations affecting hospital operations, and the termination of utilities or other services vital to the safe operation of the hospital and the safety of patients and hospital personnel. These incident reports, and the information collected in producing them, are privileged from disclosure under Public Health Law § 2805-m and Education Law § 6527 (3).
In 1986, Education Law § 6527 (3) was amended to extend that statutory privilege to incident reports required by Mental *697 Hygiene Law § 29.29 (L 1986, ch 427, § 2). A Memorandum by the State Office of Mental Health (OMH) explained that the purpose of the amendment was: “[t]o provide that records and proceedings relating to an internal medical or quality assurance review or an incident investigation in a psychiatric hospital shall not be subject to disclosure pursuant to article 31 of the Civil Practice Law and Rules and to provide that persons involved in such reviews shall not be required to testify concerning such proceedings or be held liable in defamation actions which may result from such reviews or investigations.” (1986 McKinney’s Session Laws of NY, at 2938 [emphasis supplied].) In supporting the bill, OMH noted that “[t]his provision would allow health professionals in psychiatric hospitals to openly discuss incidents which occur at the hospital without fear that the participants will be required to testify in court regarding such discussions. It would also assure that psychiatric hospitals may learn from past mistakes and use the information obtained from such incidents to improve the quality of care in their facilities.” (Id., at 2940.)
Mental Hygiene Law § 29.29 defines “incident reports” as “reports of accidents and injuries affecting patient health and welfare at * * * departmental facilities.” These reports, as relevant to the instant motion, are compiled and analyzed pursuant to uniform policies and procedures established by the Commissioner of the Office of Mental Retardation and Developmental Disabilities (OMRDD) (Mental Hygiene Law § 29.29). These policies and procedures must include the establishment of a patient care and safety team at the facility level which investigates and reports to the facility director on, among other things, suicide attempts, violent behavior on the part of patients or employees, frequency and severity of injuries incurred by patients or employees and the frequency and severity of injuries occurring on individual wards or in buildings at the facility (Mental Hygiene Law § 29.29 [1]). Such information is compiled and forwarded to the Commissioner of OMRDD (Mental Hygiene Law § 29.29 [4]) and to the New York State Commission on Quality of Care for the Mentally Disabled (the Commission) (Mental Hygiene Law § 29.29 [5]). The primary purpose of these reports appears to be the identification and resolution of child abuse and/or maltreatment at departmental facilities (Mental Hygiene Law § 29.29 [6], [7], [8]; § 45.07 [c] [2]).
*698 RELEVANT CASE LAW
The courts are divided over whether the statutory privilege provided by Education Law § 6527 (3) is limited to reports that relate to incidents subject to a medical peer review, or is broad enough to protect reports of incidents like the one at bar, which relate to injuries received by patients outside of the context of professional malpractice.
In Favor of a Limited Privilege
Several courts have held that for the privilege to apply, the reports must be generated as part of a “medical review function”. In Matter of Kristen K. v Children’s Hosp. (204 AD2d 1009, Iv denied 1994 WL 531090 [4th Dept, Sept. 30, 1994]), the Fourth Department held that the defendant hospital’s investigation into the sexual assault of a minor who was a patient of the hospital at the time of the assault did not fall within the privilege provided by Education Law § 6527 (3) “because that section provides confidentiality for information relative to medical review functions” (supra, at 1010 [emphasis supplied]). Similarly, that Court held in Elmer v State of New York (179 AD2d 1000) that transcripts of interviews conducted by the Commission as part of an investigation into alleged child abuse and neglect at Western New York Children’s Psychiatric Center were “not privileged pursuant to section 6527 (3) of the Education Law because they did not result from an internal medical or quality assurance review proceeding” (supra, at 1001 [emphasis supplied]).
In Feig v Lenox Hill Hosp. (167 Misc 2d 42, appeal dismissed 236 AD2d 897), Supreme Court for New York County held that where the defendant hospital hired an outside agency to investigate an incident in which a nonphysician held himself out to be a physician at the hospital and ordered treatment for a patient there, the agency’s reports relating to the investigation were not protected by the privilege found in Education Law § 6527: specifically, “[i]t is clear that all of the five subdivisions of Education Law § 6527 pertain to peer review, medical, dental, podiatric and optometric procedures, and resolution of disputes with patients regarding the same. The [defendant] Hospital’s contention would stretch that to embrace nonmedical areas. This court does not agree that security (or the lack or breach thereof) was within legislative contemplation in enacting Education Law § 6527 * * * Security can be equated with plant maintenance, billing functions, and routine housekeeping matters, all of which may impact upon the patient but *699 do not fit into the professional categories enumerated * * * Accordingly, no privilege should attach on the basis of Education Law § 6527 (3).” (Supra, at 45-46.)
More recently, the Court of Claims (Marin, J.) held in Feliciano v State of New York (175 Misc 2d 671, appeal pending) that the amendments to Education Law § 6527 (3) incorporating references to Mental Hygiene Law § 29.29 are “not freestanding, but clariffy] the scope of a ‘medical or quality assurance review function’ ” (supra, at 674). Judge Marin adopted a narrow reading of the Third Department’s decision in Smith v State of New York (181 AD2d 227) (discussed infra), limiting its analysis to situations where individuals might be exposed to personal liability arising from their actions in connection with a review procedure. With regard to the disclosure of incident reports created under Mental Hygiene Law § 29.29, Judge Marin held that “the policy of disclosing documents which are material and necessary under CPLR article 31 is better served by narrowing the scope of section 29.29” (Feliciano v State of New York, 175 Misc 2d, at 675, supra).
The Second, Third and Fourth Departments have all produced opinions which hold that the privilege found in Education Law § 6527 (3) pertains to the records and/or proceedings relative to a medical review function (see, e.g., Matter of Albany Med. Ctr. Hosp. v Denis, 161 AD2d 1030; Lilly v Turecki, 112 AD2d 788; Byork v Carmer, 109 AD2d 1087; Larsson v Mithallal, 72 AD2d 806); however, these decisions all involved cases arising from instances of professional malpractice or misconduct. Neither these cases nor Feig v Lenox Hill Hosp. (supra) addressed the issue at. bar; that is, whether routine incident reports generated pursuant to Mental Hygiene Law § 29.29 and not related to an investigation into professional malpractice or misconduct are privileged under Education Law § 6527 (3).
An Expanded View of the Privilege
In Smith v State of New York (181 AD2d 227, supra), the Third Department addressed the privilege in the context of reports generated by an investigation into the death of a patient at Binghamton Psychiatric Center who fell out of a fourth-story window. A claim was brought alleging that the defendant was negligent in securing the building and supervising the decedent (supra, at 228). In reversing the Court of Claims decision that the reports were discoverable, the Third Department held that (at 229-230):
*700 “[a]s a clear reading of the statute indicates, documents and proceedings relating to incidents reported under Mental Hygiene Law § 29.29 are protected from disclosure * * * Mental Hygiene Law § 29.29 requires that an incident report be made and forwarded for appropriate review on the occasion of suicides, attempted suicides and patient injuries. Therefore, the Center was required to have someone investigate and report the incident, as was done here * * * While basically acknowledging this fact, the Court of Claims nevertheless went on to state that the privilege contained in Education Law § 6527 (3) does not apply to incident reports unless there is an additional showing that the report was prepared solely by or for [OMH] or [the Commission] in connection with an ongoing review.
“Our review of Education Law § 6527 (3), however, reveals no such two-part requirement. Instead, the statute addresses three separate situations: (1) proceedings and records relating to quality assurance review functions, (2) documents and proceedings relating to participation in a medical or dental malpractice prevention program, or (3) documents generated in connection with, inter alia, an investigation of an incident required to be reported pursuant to Mental Hygiene Law § 29.29 such as the instant case * * * We can find no support in the statute for the Court of Claims’ finding that the situation presented in the third scenario described above requires an additional showing that the target document relate to some other form of review before the privilege applies.”
The Third Department went on to hold that the privilege in Education Law § 6527 (3) is not limited to malpractice review documents because such a limitation would ignore the express language of the 1986 amendments to the statute (supra, at 230).
In Brathwaite v State of New York (208 AD2d 231), the First Department reviewed the Elmer and Smith cases (supra) and sided with the Third Department’s interpretation of the statute in Smith. At issue in Brathwaite were reports by the Commission relating to its investigation into abuses at Willowbrook Developmental Center. The First Department concluded that “[c]learly, the interplay of [Education Law § 6527 (3) and Mental Hygiene Law § 29.29] places the incident report required by Mental Hygiene Law § 29.29 beyond the scope of discovery” (Brathwaite v State of New York, 208 AD2d, at 234, supra). The First Department reasoned that “[i]f an investigative agency is to fulfill its mission, it is absolutely essential *701 that it have unimpeded access to the information available. If confidentiality is not enforced, the investigator’s inquiries will be met by the muted tone and tepid comment rather than the blunt exchange and candid response” (supra, at 235).
In Duzon v State of New York (155 Misc 2d 86), which predated Brathwaite (supra), the Court of Claims (Weisberg, J.) reviewed the privilege in the context of a freelance investigation by a midlevel supervisor employed by the defendant hospital into an incident in which a patient was burned by another patient. The court held that:
“if an incident review committee existed, investigated this occurrence and issued a report, that document would be immune from disclosure * * *
“[However, w]here, as here, there has been no showing that [the supervisor] was engaged in an official investigation on behalf of an appropriate review committee, we disallow the claim of privilege” (supra, at 88). That decision would seem to be rooted in the same logic expressed by the Third Department in Bush v Dolan (149 AD2d 799, 800-801): “[s]ince the purpose of the exemption is to encourage hospitals to review the shortcomings of their physicians * * * it would be counterproductive to apply the exemption in a case where a hospital never undertook such a review. We note that it is not necessary for a hospital to establish that it acquired the information during the course of a review proceeding undertaken with respect to the particular incident that is the subject of the malpractice action. Rather, a hospital is required, at a minimum, to show that it has a review procedure and that the information for which the exemption is claimed was obtained or maintained in accordance with that review procedure.” (Emphasis supplied.)
CONCLUSION
The more expansive view of the privilege represented by Smith and Brathwaite (supra) is controlling here because Brathwaite is a First Department case. Moreover, Mental Hygiene Law § 29.29, which has been expressly incorporated into Education Law § 6527 (3), requires reporting of “accidents and injuries” arising from the suicidal or violent behavior of patients, the violent behavior of employees, patient leave without consent and medication errors (Mental Hygiene Law § 29.29 [1] [i], [ii], [v], [vi]); the frequency and severity of injuries, including the concentration of injuries within particular wards or buildings are also the subject of incident reports *702 (Mental Hygiene Law § 29.29 [1] [iii], [iv]). Thus, Mental Hygiene Law § 29.29 is not limited — or even particularly related — to a “medical review function” in the sense of controlling professional malpractice. These statutory provisions are broader and appear geared to reveal practices and procedures in the everyday care of patients, which may be improved to reduce the incidence of injury.
Next the court considers whether, in the instant case, the incident reports were obtained or maintained pursuant to a “review procedure” as required by Bush v Dolan (supra). In that regard, even if minor injuries at BFDC did not prompt official investigations, the requirement to document them in an incident report is evidence of compliance with the “review procedure” mandated by Mental Hygiene Law § 29.29. Jallad’s deposition testimony reveals that there was an investigatory committee and a procedure for investigating and reviewing certain incident reports. Although it is not clear whether any incident reports related to claimant’s decedent involved injuries severe enough to prompt an investigation by the Incident Review Committee, the court finds that subjecting one level of report to disclosure and not another would simply pervert the reporting process (cf., Duzon v State of New York, 155 Misc 2d, at 88, n, supra). Even claimant’s suggestion that the reports were maintained only for security purposes in no way detracts from the fact that they were part of a procedure intended to reduce patient and employee injuries.
Based on the foregoing, the court finds that the incident reports sought by claimant are privileged under Education Law § 6527 (3) and therefore not subject to disclosure.[2] This ruling does not, of course, prevent disclosure of underlying facts by those participating in incident investigations (see, e.g., Upjohn Co. v United States, 449 US 383, 395-396 [distinguishing between underlying facts and communications concerning those facts in the context of the attorney-client privilege]) and, in that regard, the court notes that the State made available for deposition everyone designated by claimant, and “[e]arly in the discovery process * * * offered to make those witnesses *703 with personal knowledge of the events in question available for depositions” (Polstein AfF. if 10).
Claimant’s motion to compel disclosure is denied; defendant’s motion for a protective order is granted.

. Claimant’s motion initially also sought an order compelling defendant to produce decedent’s entire “DVP” (the parties have not explained what a DVP is); however, after receiving an affirmation indicating that the Attorney-General had received all records relating to the care and treatment of decedent known to be in the possession of the New York State Office of Mental Retardation and Developmental Disabilities, claimant withdrew her request.

. This decision is at odds with Feliciano v State of New York (175 Misc 2d 671, supra): as the discussion in the text indicates, the court views the relevant statutory language as unambiguous; does not read Smith v State of New York (181 AD2d 227, supra), with which the First Department agreed in Brathwaite v State of New York (208 AD2d 231, supra), as narrowly as does her learned colleague; and considers the lower court decision in Feig v Lenox Hill Hosp. (167 Misc 2d 42, supra) distinguishable.