Jasen, J.
This appeal arises out of a tragic steam pipe explosion at 80 Pine Street in New York City on May 3, 1972, which resulted in the death of seven persons, one of which was plaintiff’s intestate. Immediately after the accident,- a Board of Inquiry was convened at the direction of the Commissioner of Buildings “ to inquire into and ascertain the facts, study the cause or causes of the accident for the purpose of formulating remedial legislation or regulations intended to prevent said occurrences in the future, and determine if there was a violation of the building code and/or any of the rules and regulations governing holders of Department of Building licenses. ’ ’ Meanwhile, on May 19,1972, the within wrongful death action was commenced against the defendants. The City of New York is not a party to the action. Pursuant to CPLR 3101 and 3120, the plaintiff moved against the Board of Inquiry for an order for discovery and inspection of:
“ A. Any and all lists of the names and addresses of witnesses appearing before the Board of Inquiry whose testimonies *116 relate to the 80 Pine explosion which occurred at 80 Pine Street, New York, New York, on May 3, 1972;
“ B. Any and all statements made by witnesses appearing before the Board of Inquiry relating to the above said explosion;
‘[1] C. Any and all documents, reports, records, notes, letters, memoranda and/or things which the Board of Inquiry had access to and which relate to the investigation of the above said explosion;
“ D. The entire content of the report of the Board of Inquiry relating to the May 3, 1972 explosion which occurred at 80 Pine Street, New York, New York.”
The various named defendants cross-moved for the same purpose.
Special Term, in granting the motion, held that “ [t]he information sought is material and necessary to the prosecution of this action ” and that “ the Board of Inquiry has special and exclusive knowledge of the events surrounding the explosion.” The Appellate Division affirmed and certified the following question: “Was the order of the Supreme Court, as affirmed by this court, properly made Í ’ ’
The order should be reversed and the question answered in the negative. The scope of disclosure which may be made against a nonparty witness is set forth in CPLR article 31. While CPLR 3101 opens with the sweeping exhortation that “ [t]here shall be full disclosure of all evidence material and necessary in the prosecution or defense of an action, regardless of the burden of proof ”, it then provides the limitation that disclosure as against a nonparty may only be had “ where the court on motion determines that there are adequate special circumstances.”
We cannot say, on the record before us, that the respondents have shown “ adequate special circumstances ”, as required by CPLR 3101 (subd. [a], par. [4]), to be entitled to the relief sought. Nowhere do they indicate what endeavors, if any, were undertaken to obtain the facts and circumstances leading to the explosion. All that the respondents show is that “ since [the Board’s] investigation was the only one taken relating to the above said explosion, its results and contents are material and necessary to the proof of [their] case ”. (Emphasis supplied.) *117 Although this allegation may have some bearing on the issue whether the information sought is “ material and necessary ” to the prosecution of the action, it certainly does not satisfy the additional requirement of the statute that “ adequate special circumstances ” be shown. Nor is the bare assertion of special circumstances sufficient; there must be specific support for the claim. It may very well be that the respondents, after conducting their investigation, may not be able to obtain sufficient independent evidence of the facts and circumstances leading to the explosion in order to establish their claim of negligence and breach of warranty. That, of course, could be a circumstance for the court to consider in passing on a new application for discovery and inspection of the records of the Board of Inquiry.
There is also presented in this case the city’s claim that the information sought is privileged and confidential. Of course, if the information sought is in fact privileged, it is not subject to disclosure no matter how strong the showing of need or relevancy. (CPLB 3101, subd. [b] ; see, also, Practice Commentary, Siegel, McKinney’s Cons. Laws of N. Y., Book 7B, CPLB 3101, p. 29.)
As part of the common law of evidence, “ official information ” in the hands of governmental agencies has been deemed in certain contexts, privileged.[1] Such a privilege attaches to “ confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged.” (People v. Keating, 286 App. Div. 150, 153; see, generally, M. M. Carrow — Governmental Nondisclosure in Judicial Proceedings, 107 U. of Pa. L. Bev. 166.) The hallmark of this privilege is that it is applicable when the public interest would be harmed if the material were to to lose its cloak of confidentiality. (8 Wigmore, Evidence *118 [McNaughton rev.], § 2378; Richardson, Evidence [10th ed.], § 456, p. 446; 1 Mottla, New York Evidence, Proof of Cases [2d ed.], § 394; Matter of Langert v. Tenney, 5 A D 2d 586.) It has been said that the privilege is a qualified one, which may be ineffective when it appears that the disclosure of the privileged information is necessary to avoid the risk of false testimony or to secure useful testimony. (See People, v. Keating, supra, at p. 153.) "While this test may be appropriate in criminal cases[2], we would reject any such qualification in civil cases, since the privilege would become meaningless if it could be breached in order to secure “ useful testimony ”. Any testimony, if relevant to the action at bar, may be said to be useful. "While some commentators have argued that the privilege is qualified and requires a balancing of the needs of the litigants against the potential harm to the public interest that may result from disclosure (see 42 Fordham L. Rev. 807; 107 U. of Pa. L. Rev. 166), these, in reality, are two sides of the same coin. Public interest encompasses not only the needs of the government, but also the societal interests in redressing private wrongs and arriving at a just result in private litigation. Thus, the balancing that is required goes to the determination of the harm to the overall public interest. Once it is shown that disclosure would be more harmful to the interests of the government than the interests of the party seeking the information, the overall public interest on balance would then be better served by nondisclosure. "While the need of a litigant for the information would present a strong argument for disclosure, the court should balance such need against the government’s duty to inquire into and ascertain the facts of a serious accident for the purposes of taking steps to prevent similar occurrences in the future.
By our decision today, we do not hold that all governmental information is privileged or that such information may be withheld by a mere assertion of privilege. There must be specific support for the claim of privilege. Public interest is a flexible term and what constitutes sufficient potential harm to the public *119 interest so as to render the privilege operable must of necessity be determined on the facts of each case. Such a determination is a judicial one and requires that the governmental agency come forward and show that the public interest would indeed be jeopardized by a disclosure of the information. Otherwise, the privilege could be easily abused, serving as a cloak for official misconduct. (8 Wigmore, Evidence [McNaughton rev.], § 2379, pp. 808-810; United States v. Reynolds, 345 U. S. 1; Stratford Factors v. New York State Banking Dept., 10 A D 2d 66.) Of course, in some situations it may be difficult to determine if the assertion of the privilege is warranted without forcing a disclosure of the very thing sought to be withheld. In such situations, it would seem proper that the material requested be examined by the court in camera. (See United States v. Reynolds, supra; Stratford Factors v. New York State Banking Dept., supra.) However, it will be the rare case that in camera determinations will be necessary. A description of the material sought, the purpose for which it was gathered and other similar considerations will usually provide a sufficient basis upon which the court may determine whether the assertion of governmental privilege is warranted.
As to the city’s claim of privilege under sections 1113 and 1114 of the New York City Charter, we hold these sections inapplicable. These sections do not confer complete immunity from discovery, but merely exclude certain papers from the requirement of mandatory disclosure of public records.
Accordingly, the order of the Appellate Division should be reversed, with leave to the respondents to proceed in accordance with CPLR article 31. If further disclosure proceedings are pursued, the city shall be allowed to object, asserting its claim of common-law privilege upon a proper showing that the privilege is warranted.

. This common-law privilege has been codified in some jurisdictions. (See, e.g., California Evidence Code, § 1040; Flournoy v. Superior Ct. for County of Los Angeles, 34 Cal. App. 3d 456; see, also, American Law Institute Model Code of Evidence, rule 228.) Although the Legislature has recently passed the Freedom of Information Law (L. 1974, chs. 578, 579, 580), it does not abolish the common-law privilege for official information.

. Different considerations may be applicable in criminal cases where the privileged information may be relevant to proof of innocence. (See Matter of Langert v. Tenney, supra, at p. 589.) We do not now consider the scope of the privilege in such cases.