OPINION OF THE COURT
Gerard M. Weisberg, J.
This is a motion by the claimant for an order directing completion of a deposition of defendant State of New York by Alexander McIntosh, and for discovery, inspection and copying of certain records. The issues raised are ownership of and privilege with respect to those materials.
The claim against the State arises from the alleged shooting death of claimant’s intestate at the hands of Ernest Davis on March 21, 1978. Davis was a senior court *383 officer employed in the Supreme Court. At the time of the alleged incident, however, Davis was also working at a purportedly unauthorized second job as a bus driver for the New York City Transit Authority. It is claimed that he was previously involved in incidents of a violent nature and that the State, through various employment or other records maintained by the Office of Court Administration (OCA) and the New York State Civil Service Commission, had notice of such violent conduct and propensities. As a result, it is argued that the State acted negligently and unconstitutionally in permitting this peace officer to carry a weapon and hold dual employment.
The claimant previously moved for a pretrial examination of an employee of OCA with knowledge of the work history of Ernest Davis and of State employee disciplinary procedures, together with the production of various records. The State had no objection to the examination but contended that the records were immune from disclosure because of an exemption under the State Freedom of Information Act (Public Officers Law, art 6, §§ 84-90). The court did not agree with the State’s position, and in its order dated December 19, 1979, it directed the defendant to submit to the pretrial examination and produce the following records to be used in connection therewith: (1) the employment record of Ernest Davis; (2) job-related complaints against him; (3) correspondence or notifications of his improper use of firearms and maintenance of more than one full-time job; (4) the rules and regulations governing the conduct of State uniformed court officers; and (5) records of any hearings and/or actions of the State concerning the conduct of Ernest Davis while an employee thereof. The order made no reference to any qualification or limitation on the production of these records.
An examination of the State by Alexander McIntosh was conducted on January 25, 1980, pursuant to that order. The claimant now moves for an order directing that a signed, executed deposition of McIntosh be returned to the claimant, that various “blank spaces” within the deposition be completed, and that the claimant have discovery of materials produced or referred to during the deposition.
*384 The State offers no opposition, except with respect to disclosure of records which were made prior to April 1, 1977 and those records which were subsequent to March 21, 1978. The basis of the objection to the earlier records is that court officers were not State employees until April 1, 1977, and that records prior to that date are not State records. The defendant does not deny ownership of the records subsequent to March 21, 1978, but it asserts that “any reports or hearings held by the defendant subsequent to the incident are not discoverable or admissible and are privileged records.”
The laws governing disclosability of records and documents are generally set forth in CPLR article 31. In essence, the items sought to be produced must be material and necessary (CPLR 3101, subd [a]); they must not be privileged or otherwise protected from disclosure (CPLR 3101, subds [b], [c], [d], [g]); and they would have to be in the “possession, custody or control” of the person to be examined or the party served with the demand for production (CPLR 3111, 3120). The overriding goal is liberal and full disclosure (see Allen v Crowell-Collier Pub. Co., 21 NY2d 403; Baker v General Mills Fun Group, 101 Misc 2d 193, 197).
The defendant’s opposition, with respect to both the preApril, 1977 and the postincident records, is presented in an essentially bare, conclusory fashion. There are no apparent objections regarding materiality or necessity. Nor are any relevant facts offered by the State in support of its assertion of privilege.
If the information sought is in fact privileged, it would not be subject to disclosure no matter how strong was the showing of need or relevancy (Cirale v 80 Pine St. Corp., 35 NY2d 113). However, the burden of demonstrating an immunity from disclosure is upon the party making the assertion (see Yannick v Tube City Iron & Metal Co., 77 AD2d 623; Watson v Mix, 38 AD2d 779). That obligation has not been satisfied.
The defendant refers this court to the decision of the Appellate Division, Second Department, in Lenard v New York Univ. Med. Center (83 AD2d 860). That case, however, *385 is not applicable to the facts of the instant motion. Lenard deals specifically with medical malpractice and the privilege that is provided under subdivision 3 of section 6527 of the Education Law for meetings and records of medical review committees. There is no indication that this particular statutory privilege was extended beyond its limited purpose of encouraging free and open medical discussions so as to include the type of hearings and records sought by the claimant.
According to section 50-a of the Civil Rights Law (L 1976, ch 413), a privilege does exist with respect to the personnel records of “police officers,” as that term is defined in CPL 1.20. A review of CPL 1.20 (subd 34) reveals that only specific categories of law enforcement personnel are included within the definition of “police officer”; court officers are omitted. Clearly, a court officer is not a police officer or a member of a duly organized police force. (See, also, Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 1.20, p 23.)
The section 50-a privilege was recently expanded, effective July 27, 1981, so that personnel records of “correction officers” are now also protected (L 1981, ch 778). Court officers, however, are not correction officers or employees of any correctional facility or institution. While it is true that both court officers and correction officers are regarded as “peace officers”, it is clear that these classifications are separate and distinct. (See CPL 1.20, subd 33; 2.10, subd 21, par a; subd 25; L 1980, ch 843, eff Sept. 1, 1980.) If the Legislature had intended to broaden this privilege to include court officers or peace officers in general, then it would have done so at the time of the amendment.
Under these circumstances, this court must conclude that the personnel records of a court officer are not entitled to the protection or benefits of the section 50-a privilege.
Even if we were to assume, for purposes of argument, that court officers were “police officers” or “correction officers” or that the privilege was also made available to court officers, the State’s records would still not be totally secure from the claimant’s scrutiny. As the court noted on the prior motion in this case, the section 50-a privilege is *386 not absolute (McKinney v State of New York, Ct of Claims, Dec. 19, 1979, p 4, n, Rossetti, J.). Discovery would still be available under certain circumstances upon the express written consent of the subject officer or as mandated by lawful court order (see Civil Rights Law, § 50-a, subds 1-3). There is no reason to assume that the records of court officers should be entitled to any greater protection than those of police officers or correction officers.
The court notes, in passing, that discovery of official records is also generally available under the State’s Freedom of Information Law, under certain circumstances and subject to specified exemptions (see Public Officers Law, art 6, §§84-90). However, the defendant has neither alleged nor demonstrated herein that it would be entitled to any of these statutory exemptions.
The only remaining issue before the court concerns the possession, custody or control of the records demanded.
In accordance with the provisions of section 39 of the Judiciary Law (L 1976, ch 966), the budget and financial administration for numerous courts, including the Supreme Court, came under the aegis of the State’s Unified Court System effective April 1, 1977. This statute also made provision for, inter alia, the transfer of nonjudicial personnel of the courts to State employment effective the same date (Judiciary Law, § 39, subd 6).
In view of the foregoing, there is no question that the records made after March 21,1978 are State records. As to the records prior to April 1, 1977, there is no allegation or indication anywhere in the papers now before this court that, as of the date of transfer, the State did not come into possession, control or custody of these materials.
This would be in general conformity with section 80 of article 5 of the Public Officers Law (L 1893, ch 179, as amd by L 1925, ch 556, eff April 9,1925) which, in essence, requires a delivery of all official books and papers from a predecessor in office to his successor. Accordingly, in the absence of any statute, regulation or case holding to the contrary, this court finds that as of April 1, 1977, the records in issue came into the possession, custody or control of the State and that the State, for all intents and *387 purposes, is now the owner thereof. The mere fact that the records had been made prior to the State’s ownership is coincidental and irrelevant. Nor does it make any difference that the records are kept at OCA or the State Civil Service Commission. Both are State agencies which have no independent existence (see People v Abbott Manor Nursing Home, 70 AD2d 434, affd 52 NY2d 766; Tillot v New York State Thruway Auth., 107 Misc 2d 229).
The court makes no determination with regard to the admissibility of any or all of the records to be disclosed herein. The rules governing disclosure differ from those concerning admissibility, and questions of admissibility must be reserved for the court at the trial of this claim. (See Siegel, New York Practice, Disclosure, § 344.)
In sum, the defendant has not demonstrated the existence of any privilege or exemption or any public purpose that would be served by maintaining the confidentiality of the records demanded. Nor is there any dispute as to materiality or necessity. In considering both the spirit and language of CPLR article 31 the court finds that the claimant is entitled to full and prompt disclosure. The motion is therefore granted in accordance with the order signed herewith.