**NEW YORK STATE ASSOCIATION OF REALTORS, INC., et al., Plaintiffs,**

v.

**Gail S. SHAFFER, Individually and as Secretary of State of New York, Defendant.**

No. 90 Civ. 5025 (VLB).

United States District Court, S.D. New York.

March 29, 1991.

Michael T. Wallender, DeGraff, Foy, Conway, Holt–Harris and Mealey, Albany, N.Y., for plaintiff N.Y.S. Ass'n of Realtors.

Edward I. Sumber, Carmel, N.Y., for other plaintiffs.

Marcie Mintz, Asst. Atty. Gen., New York City, for defendant.

## MEMORANDUM DECISION AND ORDER

JOEL J. TYLER, United States Magistrate Judge.

### BACKGROUND

In this suit brought under the Constitution and statutes of the United States, plaintiffs challenge the constitutionality of regulations promulgated by the Secretary of the State of New York barring realtors from soliciting homeowners in certain "cease and desist zones" perceived to be the target of "blockbusting"[1] activity.

---

1. The term "blockbusting" refers to the unethical practice of realtors, whereby homeowners in a particular neighborhood are solicited and warned of declining property values and en-

The regulations prohibit solicitation of homeowners who have given written notice to realtors or to the Secretary of State that they do not wish to be solicited. *See* 19 NYCRR § 175.17(b), (c).[2] Plaintiffs' allege that the regulations violate their constitutional rights to freedom of speech, equal protection, due process, the privileges and immunities of citizens rights, and violate federal fair housing laws, state law and the Supremacy Clause.

Plaintiffs served defendant with a First Notice to Produce Documents, dated September 27, 1990 ("Requests"). What is now before us for resolution is defendant's claim of privilege with respect to certain documents. In Request number "14" plaintiffs seek the production of "[a]ll correspondence between the defendant and other governmental officials, including, but not limited to members of the New York State Legislature (including staff people of such legislators) relating to the enactment of Section 442–h of the Real Property Law (Chapter 696 of the Laws of 1989)." Plaintiffs' Request number "16" requests the production of "[a]ll documents regarding the rule makings and emergency rule makings addressed in the complaint, including but not limited to, drafts and memoranda with respect thereto."

Defendant objects to these Requests "based on the governmental and deliberative process privileges."[3] Apparently, as inferred from the case law submitted by the parties, this objection purports to rely on the common law "public interest" privilege acknowledged by the New York Court of Appeals in *Cirale v. 80 Pine Street Corp.*, 35 N.Y.2d 113, 359 N.Y.S.2d 1, 316 N.E.2d 301 (1974).[4] In *Cirale*, the court, however, did "not hold that all governmental information is privileged or that such information may be withheld by a mere assertion of privilege," thus making it clear that the privilege was qualified, not absolute. 35 N.Y.2d at 118, 359 N.Y.S.2d 1, 316 N.E.2d 301.

> There must be specific support for the claim of privilege. Public interest is a flexible terms and what constitutes sufficient potential harm to the public interest so as to render the privilege operable must of necessity be determined on the facts of each case. Such a determination is a judicial one and requires that the governmental agency come forward and show that the public interest would indeed be jeopardized by a disclosure of the information. Otherwise, the privilege could be easily abused, serving as a cloak for governmental misconduct.

*See Cirale*, 35 N.Y.2d at 118–119, 359 N.Y.S.2d 1, 316 N.E.2d 301.

The defendant has submitted the documents at issue for *in camera* inspection. We find very little contained in those documents that would suggest that a public interest, much less a strong public interest, would be served by their nondisclosure. Defendant, nevertheless, urges us to take the position of the New York Supreme

---

couraged to sell their homes, thus generating or "churning" realty commissions. Racial, ethnic or religious diversity in the neighborhood is generally suggested or implied as the cause of the expected decline in property values.

**2.** These regulations were initially promulgated as emergency rules in September of 1989 and were made final on April 2, 1990, pursuant to the provisions of New York Real Property Law sec. 442–h. These enabling provisions were enacted by the legislature in response to the New York Court of Appeals decision in *Matter of Campagna v. Shaffer*, 73 N.Y.2d 237, 538 N.Y. S.2d 933, 536 N.E.2d 368 (1989), which held that the Secretary of State lacked such legislative authority.

**3.** With respect to Request number "14", defendant also objects on the grounds that the documents requested are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. We have already ruled that the allegedly privileged information is otherwise relevant. With respect to Request number "16", defendant also objects on the ground that the request is overboard and burdensome. We find no merit to this objection either.

**4.** This suit is grounded in federal question and pendant jurisdiction. Pursuant to Federal Rule of Evidence 501, we are, therefore, "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Accordingly, we need not necessarily follow the courts of New York State. *See State of New York v. Cedar Park Concrete Corp.*, 130 F.R.D. 16, 21 (S.D.N.Y.1990).

Court Appellate Division, First Department and find that "the public interest to be protected in ensuring full and frank exchanges regarding governmental decision-making outweighs the public interest to be served by [disclosure]." *One Beekman Place, Inc. v. City of New York*, 564 N.Y.S.2d 169, 170 (App.Div. 1st Dept.1991).

In *One Beekman Place*, plaintiffs' challenged a rezoning measure as illegal, "arguing that it was not reasonably calculated to promote the general welfare of the community as a whole, was not consistent with a well-considered, comprehensive plan, and violated the equal protection clauses of the state and federal constitutions." *Id.* at 169. The court also noted that the government disclosed "well over a thousand pages of documents, and that every aspect of the rezoning was subject to public review and comment...." *Id.* at 170. We do not attempt to distinguish the documents themselves at issue in *One Beekman Place* from those in the instant case, since the substance of the *in camera* documents was obviously not discussed in *One Beekman Place* and, thus, not available for comparison. We can only assume that the information contained in the documents inspected *in camera*, in that case, was of a nature that the balancing of interests warranted a protective order.

■ We decline to interpret the common law of privilege as creating an absolute privilege from disclosure of all internal legislative and executive materials relating to the enactment of legislation and the promulgation of rules and regulations; we acknowledge no presumption against disclosure. Moreover, defendant, in this case, has not acknowledged, much less sustained, its burden of showing the existence of the claimed privilege. *See Cirale, supra*, 35 N.Y.2d at 119, 359 N.Y.S.2d 1, 316 N.E.2d 301. Defendant instead seeks to incorrectly place a negative burden of proof on plaintiffs. *See* letter of Assistant Attorney General Marcie S. Mintz, dated February 11, 1991, at 3.

■ Each case must be reviewed on its own particular facts. In general, we find the information contained in the documents

at issue to be rather innocuous. We also believe that the public interest would best be served, in a suit consisting of a constitutional challenge to the legislation and regulation, by disclosure of documents pertaining to the intended scope, and underlying purpose and rationale of the measures. The constitutionality of the "anti-blockbusting" measures is a matter which potentially effects a much broader constituency than the particular rezoning measure at issue in *One Beekman Place*.

■ Nevertheless, with respect to certain correspondence from legislators to the Secretary of State concerning the enactment of the challenged bill, we find that the potential to discourage "candor in the development of policy" weighs against disclosure, (*see One Beekman Place, supra*, 564 N.Y.S.2d at 170), particularly in light of the fact that legislators are entitled to change their positions repeatedly before publicly supporting or opposing legislation. This deliberative process, including the analysis, recommendations and opinions of staff members should be protected from disclosure, unless the information is highly relevant to a suit, which in turn, must be of a strong enough public interest to outweigh the potential for discouraging a deliberative and thoughtful legislative process. We, therefore, only protect those documents reflecting a political decision to support or oppose proposed legislation. Documents relating to the underlying rationale or purpose for the legislation and rule-making, its intended scope and effect, which are created or approved by those already publicly supporting it, need not be protected and would better serve the public interest by disclosure.

We hereby order that all documents requested in plaintiffs' production request numbers "14" and "16" be produced, with the exception of the following:

1) March 20, 1989 letter from Senator Frank Padavan to defendant.

2) April 12, 1989 letter from Senator Manfred Ohrenstein defendant.

3) March 15, 1989 Opinion letter from Kathy Whipple, Esq. to Maureen

Glasheen, Esq. regarding DOS 1989 Legislative Proposal 89–26, which we find to be protected by the absolute privilege against disclosure of attorney-client communications.

The remaining documents are to be produced by defendant within ten (10) days of the date of this order.

SO ORDERED.