OPINION OF THE COURT
George D. Marlow, J.
Office of the State Inspector General of New York (OSIG) *700 brings this action to oppose plaintiffs motion to issue a court-ordered subpoena duces tecum.
In the underlying lawsuit, plaintiff, Michelle LaValle, alleges that from June 1997 through July 1998, while employed at Harlem Valley and Brookwood, both New York State Juvenile Detention Centers, she suffered sexual abuse and harassment at the hands of a direct supervisor and by a fellow employee at each of these two facilities. Plaintiff claims her direct supervisor, Karl Grant, sexually abused her during her initial assignment at Harlem Valley from June 1997 through April 1998. Because Mr. Grant allegedly continued his abusive conduct, plaintiff requested and obtained a transfer to Brookwood in April 1998, where she alleges additional sexual harassment by a different co-worker, Marc Davis. Fearing reprisals, plaintiff did not formally complain until July 1998.
In July 1998, OSIG began to investigate plaintiffs allegations, and she now seeks to obtain all the information OSIG acquired about her case.
OSIG is a State executive agency whose primary function is to investigate complaints of corruption, fraud, criminal activity, conflicts of interest, or abuse in New York agencies. To facilitate that mission, OSIG contends that information it gathers from its investigations should be protected from disclosure, in order to encourage potential witnesses to come forward with information about wrongdoing of fellow or superior State workers. Therefore, OSIG opposes release of reports of their investigation into this plaintiffs allegations.
While both parties concede no statute expressly authorizes OSIG to protect its investigative files, OSIG contends that Executive Order No. 39 (9 NYCKR 5.39) gives their executive agency that authority. In pertinent part, it provides:
“The State Inspector General shall have the following duties and responsibilities * * *
“4. To prepare and release to the public written reports of * * * investigations, as appropriate and to the extent permitted by law, subject to redactions to protect the confidentiality of witnesses. The release ,of all or portions of such reports may be deferred to protect the confidentiality of an ongoing investigation.”
However, while that Executive Order gives OSIG broad investigative authority, the Executive Order is silent concerning OSIG’s disclosure policies. Its only reference to disclosure *701 grants OSIG discretion to release public, written reports of its investigations. Therefore, OSIG contends it has a corresponding authority to refuse to disclose its investigative files.
OSIG further notes that their agency’s policy and procedure manual requires employees to sign a confidentiality agreement to keep secret the agency’s matters. It further empowers OSIG to discipline any employee who violates this agreement.
However, this same manual refers both to requests for information or records made by a law enforcement agency or by prosecutors and other New York State agencies. The manual states that before any of these information requests may be granted, OSIG’s counsel must review the relevant material. That language bespeaks a strong policy that subjects OSIG’s investigative files to disclosure, but only after careful scrutiny.
Both parties cite Matter of World Trade Ctr. Bombing Litig. (93 NY2d 1) for the proposition that a trial court has the discretion to determine whether specific “confidential” information should be turned over, especially where the information directly relates to the litigation. But courts must exercise this by balancing, inter alia, the need for disclosure, the availability of the information elsewhere, the facts of the case, the sensitivity of the information in question, and the advantages of preserving its confidentiality.
Plaintiff further relies on Svaigsen v City of New York (203 AD2d 32, 34) and Flores v City of New York (207 AD2d 302, 304), which involved fatal police shootings where plaintiffs were given the police department’s internal affairs unit’s information about the matters in litigation.
OSIG, however, argues that World Trade’s balancing test supports its contention that disclosure of investigative material about plaintiff’s matter is inconsistent with the public interest. It argues that its acquisition of information from witnesses would be compromised if the files were disclosed in civil suits because witnesses’ willingness to come forward with truthful information would be chilled. Indeed, says OSIG, the cooperation of witnesses serves its over-all goal of correcting serious systemic problems. Thus, OSIG concludes that plaintiff’s pursuit of money damages to redress her claim is a factor outweighed by OSIG’s broader concern to maintain the safety and integrity of the work environment.
OSIG also relies on Lowrance v State of New York (185 AD2d 268 [1992]), wherein plaintiff, a prison inmate, was denied access to information obtained by the Inspector General’s Office *702 about its investigation of a correction officer’s conduct toward the inmate. While the Lowrance Court appeared to tacitly recognize the confidentiality of investigative records, it expressly based its holding on the fact that access to confidential information could negatively impact security within a prison system. Here, however, Ms. LaValle is a State employee alleging harmful misconduct toward her by other State employees, in settings which do not present the same high level of security concerns implicated in Lowrance.
Furthermore, Education Law § 6527 and Mental Hygiene Law § 29.29 specifically bar disclosure of incident reports generated within State psychiatric facilities to promote “ ‘unfettered investigation[s]”’ (see, e.g., Katherine F. v State of New York, 94 NY2d 200, 205). However, Katherine F., which upheld nondisclosure, involved incidents of alleged patient care abuse by employees. This type of misconduct demands the highest level of society’s protection because of obvious issues of patient vulnerability. This case appears to be one of first impression because, unlike Katherine F., it involves a claim by one State employee alleging sexual abuse and harassment by another State employee. Although no individual should be subjected to any form of mental and/or physical abuse, an employee’s situation is, in some respects, different from an incapacitated patient who is utterly dependent in every way on the very employees who may be the investigative targets. Therefore, absent a clear legislative directive forbidding disclosure under the circumstances here, and in light of OSIG’s policy restricting its investigative files, this court concludes that it would be legal and appropriate to balance the important interests of each party in order to arrive at an equitable resolution of this dispute.
Courts have long recognized that maintaining certain government documents privileged from disclosure serves the public interest. (Cirale v 80 Pine St. Corp., 35 NY2d 113.) However, the “[plublic interest encompasses not only the needs of the government, but also the societal interests in redressing private wrongs and arriving at a just result in private litigation.” (Id., at 118.) Accordingly, a court, in order to balance the interests of both parties, must be assured that the government does not abuse its nondisclosure authority. “Otherwise, the privilege could be easily abused, serving as a cloak for official misconduct.” (Id., at 119.)
In addition, courts should consider ordering disclosure of relevant information beyond plaintiff’s reach in an appropriate *703 case. (Cirale v 80 Pine St. Corp., supra, at 118-119.) Therefore, examining disputed materials by the court in camera “will usually provide a sufficient basis upon which the court may determine whether the assertion of governmental privilege is warranted.” (Id., at 119.)
In the instant case, the court, after its in camera examination of the information in question, finds that OSIG has a legitimate misgiving about disclosing certain specified information, particularly witnesses’ statements. Ignoring or minimizing that concern might inhibit candid witness interviews in future inquiries to unearth sexual harassment and other abuses. Moreover, neither party has adequately shown that the witnesses’ statements are in or out of plaintiffs reach through alternative means.
Therefore, giving due regard to plaintiffs interest in reviewing prior statements of witnesses before their trial testimony— should any of them testify — and without unduly sacrificing OSIG’s equally legitimate interest in maintaining confidentiality, the court directs that plaintiff be given access to written statements of witnesses upon request, but not before 9:30 a.m. of the business day before jury selection.
Furthermore, since defendant, State of New York, does not oppose plaintiffs motion to disclose OSIG’s investigation files, defendant shall have an equal opportunity to review the same witnesses’ statements in accordance with the foregoing direction.
Finally, the court also directs OSIG to disclose to plaintiff the telephone records and time sheets from both Harlem Valley and Brookwood, because they contain information whose disclosure would not negatively impact future witness cooperation and whose contents are arguably relevant to the underlying case.
Accordingly, the court grants plaintiffs motion for issuance of a subpoena duces tecum as to the telephone and time records. However, the court denies the balance of her requests for relief, with leave to renew at the appropriate time in accordance with the above decision.