OPINION OF THE COURT
Diane L. Fitzpatrick, J.
Claimant brings a motion to compel the production of certain documents pursuant to CPLR 3126.[1] Defendant opposes the motion. Defendant has provided some of the demanded documents for in camera inspection.
*1036 This claim arises from a serious assault within the confines of Five Points Correctional Facility on October 13, 2008. Claimant, an inmate, was attacked by his cell-mate and stabbed in the eye. Claimant also asserts that he failed to receive proper medical care for his injuries due to the State’s alleged medical malpractice.
As relevant to this motion, claimant alleges that the State knew or should have known of the foreseeable risk of attack by his cell-mate and failed to take reasonable precautions to protect him from the risk of injury. Claimant alleges the State negligently assigned him to share a cell with an inmate the State knew suffered from mental illness, and was serving a life sentence for the stabbing death of his wife, and the stabbing and attempted murder of his wife’s roommate. Claimant also asserts that he made three written requests to be moved to a different cell before he was stabbed, all of which were denied.
As part of the process of discovery pursuant to CPLR article 31, claimant served upon defendant a third supplemental notice for discovery and inspection seeking among other things:
“(4) Any pre-sentencing report upon which the Dept, of Correctional Services (DOCS)[2] relied in connection with a determination to double-bunk Clifford Damon; and
“(5) Any sentencing minutes upon which the Dept, of Correctional Services (DOCS) relied in connection with a determination to double-bunk Clifford Damon; and . . .
“(8) The names and DIN numbers of any inmates who double-bunked with Clifford Damon prior to his being double-bunked with claimant.”[3]
A fourth supplemental notice for discovery and inspection was also served upon defendant, seeking:
“(7) All documents generated in connection with the development of DOCS Directive No.4003, including but not limited to any ‘drafts’ of the directive, any correspondence or memoranda to or from superintendents of correctional facilities regarding proposed language in the directive, all correspondence or memoranda to or from legal counsel regarding the directive, and any other documents *1037 concerning the formulation of the directive.”[4]
Defendant refused to provide the requested information. Defendant asserted, in response to the third supplemental notice for discovery and inspection, that the presentence report and minutes were confidential relying upon Criminal Procedure Law § 390.50 and 9 NYCRR 8000.5 (c) (2) (i). Defendant also asserted that the court previously ruled in a prior decision and order that identifying information regarding inmate Damon’s prior cell-mate, before claimant, should not be released. In response to the fourth supplemental notice, defendant argues that preliminary information and correspondence related to the creation of DOCCS Directive No. 4003 are not relevant and subject to the public interest privilege and deliberative process privilege.
CPLR 3101 directs that “[t]here shall be full disclosure of all matter material and necessary” to the prosecution or defense of an action (CPLR 3101 [a]). There are only three classes of protected materials: privileged matter which is absolutely immune from discovery, attorney work-product, also immune from disclosure, and materials prepared for trial which may be discoverable upon a showing of “substantial need and undue hardship.” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376-377 [1991].) The burden is on the party objecting to disclosure to establish its entitlement to protection (id. at 377). These are the underlying principles for this decision and order.
Presentence Report and Minutes
It is claimant’s position that the crimes that inmate Damon committed made it inappropriate for him to be double-bunked according to DOCCS Directive No. 4003. Claimant maintains that the State acknowledged that it considered the presentence report and, if available, the presentencing minutes when it determined that inmate Damon was appropriate for double-bunking.[5] Since the State relied upon this information in justifying its placement of inmate Damon in a cell with claimant, he argues, the information is material and necessary to the prosecution of this action, and defendant should be directed to produce these documents.
Defendant, in opposition, argues that presentencing information — the report and minutes — are confidential and may not *1038 even be released to the subject inmate without authorization from the sentencing court. Defendant relies upon Holmes v State of New York (140 AD2d 854 [3d Dept 1988]) in support of its position. In Holmes, an inmate was assaulted by another inmate and sued the State alleging that the perpetrator should not have been housed in general population because he was a “known mental patient.” (Holmes, 140 AD2d at 854.) The trial court withheld materials relating to the perpetrator’s social, psychological, and psychiatric background because they were part of the presentence report, and pursuant to Criminal Procedure Law § 390.50 were confidential. The appellate court affirmed and emphasized that no other court other than the sentencing court is statutorily authorized to permit disclosure of this presentencing information.
Section 390.50 of the Criminal Procedure Law entitled, “Confidentiality of pre-sentence reports and memoranda” provides in part:
“[a]ny pre-sentence report or memorandum submitted to the court pursuant to this article and any medical, psychiatric or social agency report or other information gathered for the court by a probation department, or submitted directly to the court, in connection with the question of sentence is confidential and may not be made available to any person or public or private agency except where specifically required or permitted by statute or upon specific authorization of the court.” (CPL 390.50 [1].)
Pursuant to subdivision (3) of CPL 390.50, the probation department must make available a copy of the presentence report and any medical, psychiatric, or social agency report submitted to it in connection with its presentence investigation or its supervision of a defendant to the state agency with whom the criminal defendant is committed. That section further provides that “[i]n any such case, the court or agency receiving such material must retain it under the same conditions of confidentiality as apply to the probation department that made it available” (CPL 390.50 [3]).
It seems clear that the presentence report and any memoranda related to the presentencing investigation are absolutely privileged from disclosure (CPL 390.50 [3]; Holmes v State of New York, 140 AD2d 854 [1988]). Even if DOCCS has the report and accompanying memoranda in its possession, the statute places the same restrictions on that state department to keep the information confidential as on the probation depart *1039 ment that performs the investigation or provides the report to DOCCS (CPL 390.50 [3]). Defendant has not provided this report or memoranda in camera. If claimant feels he needs this information, application must be made to the Kings County Supreme Court.
CPL 390.50, however, does not address the confidentiality of the sentencing minutes, nor do any of the other statutory sections related to the sentencing process (see CPL arts 380-430). Defendant did not cite any specific case law, nor has this court found any case law on point where discovery of the sentencing minutes was in issue. Several cases were found where the sentencing minutes were used in some portion of a civil proceeding (see generally Hughes v Pacienza, 33 Misc 3d 1208[A], 2011 NY Slip Op 51810[U] [Sup Ct, Kings County 2011] [used as an exhibit for a motion for summary judgment]; Villacorta v Saks Inc., 32 Misc 3d 1203[A], 2011 NY Slip Op 51160[U] [Sup Ct, NY County 2011] [used as an exhibit for a motion to dismiss]). The need for confidentiality relating to the presentencing report and memoranda, which may involve review of the mental health and medical records, as well as other highly personal information, does not logically extend to the transcript of the open court proceeding where the sentence is actually imposed.
The State has provided a copy of the transcript from inmate Damon’s sentencing for in camera review. There are no references to inmate Damon’s medical, psychiatric, or social agency evaluations or opinions. Nor is any portion of the presentence report or memoranda excerpted in the minutes. Although there appears to be little new information in these minutes, the presentencing transcript of the proceedings should be released to claimant since it was part of the information considered when defendant determined inmate Damon could be double-bunked.
Release of Name and DIN Number of Inmate Damon’s Prior Cell-Mate
Claimant seeks the name and DIN number of the inmate who shared a cell with inmate Damon prior to his cell assignment with claimant to determine if that inmate had any problems with inmate Damon. Claimant grounds his request on the assertion that the State’s notice or knowledge of problems between inmates may not always be reduced to writing. The basis for claimant’s position is his assertion that the State knew that claimant was having problems with inmate Damon prior to the *1040 attack. Claimant alleges that he advised Sergeant Shields that allowing him and inmate Damon to continue to be cell-mates might result in violence, but Sergeant Shields only acknowledged that claimant expressed discomfort over inmate Damon’s religious beliefs. Given defendant’s denial of the reason claimant asserts he wanted to be moved to a different cell, claimant seeks to consult with inmate Damon’s former cell-mate. Defendant submits, in camera, the unredacted double cell information sheet for Clifford Damon, reflecting the evaluation of his placement with his cell-mate before claimant which has already been provided to claimant in redacted form. The chronological history display indicates the location of inmate Damon’s prior cellmate through September 2009, and shows that he was transferred out of Five Points Correctional Facility on July 28, 2008, and did not return until May 28, 2009. Also provided, in camera, is that inmate’s custodial transfer information and an affidavit of Patrick O’Neill, the Five Points Inmate Grievance Program Supervisor. Defendant asserts that the information demanded cannot be provided because it would interfere with this nonparty inmate’s privacy and create a possible security violation pursuant to Public Officers Law §§ 87 and 96. Defendant also asserts that the court directed that this information be redacted in a prior court order dated April 11, 2011, on an earlier discovery motion. In review of that decision and order, although the court did direct that the cell-mate’s name and DIN number be redacted, claimant did not specifically request that information, so the earlier decision and order did not resolve this issue.
No compelling reason has been offered by defendant to prevent claimant from knowing the name of the inmate who was housed with inmate Damon immediately prior to his placement with claimant. Public Officers Law §§ 87 and 96 do not preclude this information from disclosure by the court. The risk to security and safety in the prison setting is a very valid concern and can appropriately restrict disclosure (see Public Officers Law § 96 [2] [c]; Lowrance v State of New York, 185 AD2d 268, 269 [2d Dept 1992]). Defendant has not elaborated as to why releasing this information would result in such a risk. Although it is questionable whether inmate Damon’s prior cellmate feared for his safety in the absence of any documentation evidencing such a concern, the potential exists and is relevant to what the State knew or should have known about the risk of violence inmate Damon posed. Given the seriousness of claimant’s injuries and his burden of proof, any privacy interest *1041 of the prior cell-mate in keeping his identity confidential is outweighed for this limited intrusion.
Accordingly, the court finds that the copy of the affidavit of Patrick O’Neill should be provided to claimant with only the DIN number of inmate Damon’s prior cell-mate redacted. No other information regarding this inmate should be disclosed.
Documentation Relating to the Drafting and Revisions of Directive 4003
Claimant seeks the “paper trail” for the approval of Directive No. 4003. Directive No. 4003 is an official regulation of DOCCS (7 NYCRR 1701.1-1701.8). Claimant argues that the state employees’ position[6] that the directive allows the placement of inmate Damon in a double-bunk cell because his violent and brutal attack of two victims does not meet the prohibition against double-cell housing for inmates whose “crime(s) of commitment involve acts of violence resulting in serious physical injuries to multiple victims or intentional and depraved infliction of extreme physical pain resulting in serious physical injury to any one victim,”[7] does not make sense based upon the plain language used in the directive. The state employees who were deposed could not identify the source supporting their position that inmate Damon’s stabbing two victims was not “extreme violence” under the language in that directive. Claimant asserts that if the quoted language does not apply in this situation, then he wants to know what the language was intended to include when the directive was drafted.
Defendant argues that Directive No. 4003 does not apply to Five Points so the intent of the drafters is not relevant to this case. Directive No. 4003 specifically indicates that its purpose is to provide protocols for the management of double-cell housing for maximum or medium security facilities constructed before 1996 where the cell was originally designated to accommodate a single inmate but has since been equipped to accommodate two inmates (7 NYCRR 1701.1, 1701.2). The witnesses deposed[8] as well as counsel acknowledge that Five Points was built as a double-cell facility. The plain language of that directive and regulation makes it inapplicable to a facility such as Five Points.
*1042 Claimant was provided a copy of Five Points Policy and Procedure 9.9[9] which describes how Five Points Correctional Facility evaluates whether an inmate is appropriate for double-cell housing. This document indicates that the “Double Cell Information Sheet” is completed and used to determine whether an inmate is a candidate for double-cell housing. That form[10] refers only to whether an inmate’s instant offense or criminal history is of an “extremely violent nature.” There is no indication how “extremely violent” is defined, or what type of conduct would meet that criteria. That form was completed for inmate Damon, and “no” was checked in reference to whether his instant offense and criminal history were extremely violent.[11]
Mr. Douglas Botsford testified that the criteria in Directive No. 4003 concerning “[cjriminal histories of extreme violence” which applies directly to single-cell facilities converted to double-cell would apply equally to facilities initially constructed for double-cell occupancy.[12] Yet even with some applicability here, the need for information relating to how this directive was created to support claimant’s burden in this case is questionable. In any event, it is clear that the only provision in the directive that is in issue for purposes of this claim is section 7 NYCRR 1701.5 (c) (4) (iii). This is in fact the only provision claimant seeks information about based upon his submissions on this motion.
Defendant argues that even if the court finds that the directive may be applicable to Five Points, Public Officers Law § 87 (2) exempts the information requested from disclosure. Public Officers Law § 87 (2) (g) (i)-(iii) protects from disclosure inter-agency or intra-agency material unless the material are statistical or factual tabulations or data; instructions to staff that affect the public; or final agency policy or determinations. The privilege is cast in terms of a demand for information by a member of the public under the Freedom of Information Law (Public Officers Law §§ 84-90 [hereinafter FOIL]). Even if this exemption is applicable to a demand for disclosure under the CPLR (see Mecca v Shang, 55 AD3d 570 [2d Dept 2008] [relying upon Matter of Gould v New York City Police Dept., 89 NY2d 267, 276-277 (1996)]; Febee v City of New York, 95 AD2d 664 [1st Dept 1983]; compare Clark-Fitzpatrick, Inc. v State of New *1043 York, 209 AD2d 572, 573 [2d Dept 1994]; Matter of Schwartz, 130 Misc 2d 786 [Sur Ct, Nassau County 1986]), Public Officers Law § 87 (2) does not preclude disclosure of all information (see Public Officers Law § 87 [2] [g] [i], [ii]). Defendant also raised in its response to claimant’s demand the common-law public interest privilege and the deliberative process privilege. The public interest privilege has evolved by case law, independent of the exemptions authorized by FOIL (Matter of World Trade Ctr. Bombing Litig., 93 NY2d 1, 8 [1999]; Cirale v 80 Pine St. Corp., 35 NY2d 113, 117-118 [1974]). It protects confidential communications to and between public officers where the public interest requires it (Cirale, 35 NY2d at 117).
Since defendant has not provided any of this information in camera, the court hereby directs that defendant provide correspondence, memoranda or other documents relating to the formulation of Directive No. 4003, specifically section 1701.5 (c) (4) (iii) to the court in camera so that it can determine if any of the information is relevant or material, subject to a privilege or should be disclosed to claimant. This information shall be sent to the court within 45 days of the date this decision and order is filed.
Deposition of Theresa A. Knapp-David
The relevance of Ms. Knapp-David’s deposition is questionable given her sworn affidavit that she was not Director of Classification and Movement in 2008 when Directive No. 4003 was revised or when inmate Damon was found to be eligible to be placed in a double cell at Five Points Correctional Facility. She did previously hold that position however, and was party to some portion of the process of revising Directive No. 4003. Since the parameters of what is relevant or privileged relating to the formulation of Directive No. 4003 cannot be determined before the court’s in camera review, the court will reserve decision on the deposition of Ms. Knapp-David pending its in camera review of any documents defendant submits.
Accordingly, claimant’s motion is granted in part in accordance with the directions set forth above and denied in part.

. Pursuant to CPLR 3124, claimant brings a motion to compel the production of certain documents and for relief under CPLR 3126.

. It is now the Department of Corrections and Community Supervision (DOCCS).

. Levy aff in opposition, exhibit 1.

. Levy aff in opposition, exhibit 2.

. See claimant’s exhibit 2, deposition of Douglas Botsford at 26-29; exhibit 4, deposition of Courtney C. Greene at 14, 16.

. See claimant’s exhibits 2-4, deposition excerpts of Douglas Botsford, Lori Hinson, and Courtney C. Greene.

. Defendant’s exhibit 8, Directive No. 4003, 7 NYCRR 1701.5 (c) (4) (iii).

. See exhibit 2 at 17-22, exhibit 3 at 27.

. Defendant’s exhibit 9.

. Defendant’s exhibits 7, B.

. Defendant’s exhibits 7, B.

. Claimant’s exhibit 2 at 21-22.