Matter of Comptroller of the City of N.Y. v City of New York (2021 NY Slip Op 04685)





Matter of Comptroller of the City of N.Y. v City of New York


2021 NY Slip Op 04685


Decided on August 12, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 12, 2021

Before: Renwick, J.P., Kern, Singh, Moulton, JJ. 


Index No. 452285/20 Appeal No. 14062 Case No. 2020-05045 

[*1]In the Matter of the Comptroller of the City of New York, Petitioner-Appellant-Respondent,
v
The City of New York, Respondent-Respondent-Appellant.


Morrison Cohen LLP, New York (Y. David Scharf of counsel), for appellant-respondent.
James E. Johnson, Corporation Counsel, New York (Jeremy W. Shweder of counsel), for
respondent-appellant.



Order, Supreme Court, New York County (Lyle E. Frank, J.), entered on or about December 16, 2020, which, insofar as appealed from, denied the Comptroller's CPLR 2308(b) petition, in connection with his investigation under New York City Charter § 93(b) relating to the City's COVID-19 pandemic planning and response, to enforce the subpoena for documents and granted respondent-cross-petitioner City's cross petition to quash the subpoena to the extent it seeks the production of documents concerning communications between Mayor de Blasio, or First Deputy Mayor Fuleihan, and others relating to the COVID-19 pandemic, but denied the cross petition seeking to quash, in their entirety, the document and testimonial subpoenas sought by the Comptroller and directed document production on a rolling basis and the depositions of two City witnesses without limits on the scope of questioning, unanimously affirmed, without costs.
Under Section 93(b) of the City Charter, the Comptroller, as the City's chief fiscal officer, has the broad power to "audit and investigate all matters relating to or affecting the finances of the city, including without limitation the performance of contracts and the receipt and expenditure of city funds." This investigative power includes the authority to compel testimony and the production of documents relating to City financial matters from "such persons as the [C]omptroller may deem necessary" (City Charter § 93[b]).
In May 2020, in the midst of the ongoing COVID-19 public health emergency, Comptroller Scott Stringer commenced a Section 93(b) investigation of the City's preparation for, planning for, and response to the pandemic to identify how those efforts impacted the City, its finances, residents and businesses. In connection with the investigation, the Comptroller issued a "request for information" to the City, which it sent to Dean Fuleihan, the City's First Deputy Mayor, seeking information and communications related to COVID-19.
When the City was unable to fully comply with the request for information, on June 11, 2020, the Comptroller served a subpoena seeking the City's production, by July 31, 2020, of five categories of documents received, created or issued between November 1, 2019 and March 22, 2020, by the City. Additionally, over the course of the investigation, the Comptroller issued subpoenas for the testimony of certain City officials.
Over the next several months, the City sought to comply with the demands and the parties negotiated over the scope and timing of the full document production. When the negotiations deteriorated, on November 18, 2020, the Comptroller commenced this proceeding for an order pursuant to CPLR 2308(b) compelling the City to fully comply with the document subpoena by December 31, 2020. In support of the petition, the Comptroller argued that he had the authority to conduct the Section 93(b) investigation and obtain the requested documents and testimony because the investigation into the impact [*2]of the City's pandemic planning and response on the operations of the City and health and safety of the population concerns matters that directly affects the City's finances. The Comptroller further argued that he properly sought information that was used to make decisions about what pandemic-related contracts to enter into, which purchases to make and how to allocate and utilize City resources, supplies and personnel.
The City filed an answer and cross petition under CPLR 2304 and 3103, seeking an order dismissing the special proceeding and quashing, modifying or fixing conditions on the City's compliance with the subpoena. The City argued that the investigation is an unauthorized fishing expedition that has no relationship to the City's finances and that the subpoena improperly calls for the production of materials shielded by the public interest privilege. The City also sought to quash the two testimonial subpoenas and requested a protective order preventing the Comptroller from asking questions beyond the scope of the investigation during the interviews it was conducting.
The court granted in part and denied in part the petition and cross petition to the extent of ordering the City to comply with the request for documents on a rolling basis beginning no later than March 15, 2021 and to continue producing documents no less than monthly so as to achieve full compliance by July 15, 2021, while quashing that part of the request for documents insofar as it concerned pandemic-related communications between the Mayor, or Deputy Mayor Fuleihan, and others. The court, noting the broad language of Section 93(b) and taking judicial notice of the devastating impact of the pandemic on the City's economy, found that "it is certainly appropriate for the Comptroller to investigate the City's response, and to make recommendations for the future." The court denied the City's cross petition's request to quash the testimonial subpoenas, deferring to the Comptroller and citing again the broad language of the Charter allowing the Comptroller to take the testimony deemed necessary. The court quashed the request for documents to the extent it sought communications involving the Mayor and First Deputy Mayor. While acknowledging the need for transparency, the court found that, as for these documents only, given the deadly pandemic, the need for open and honest communications between the Mayor and the Mayor's top deputies outweighs the Comptroller's right to review the information, noting that "whether such a privilege applies is a fact specific determination . . . limited to the unique facts of this case."
As an initial matter, the court properly found that the Comptroller's investigation did not exceed his authority under the Charter. Section 93(b) of the Charter gives the Comptroller the power to "audit and investigate all matters relating to or affecting the finances of the city, including without limitation the performance of contracts and the receipt and expenditure [*3]of city funds" (emphasis added). The Comptroller also has the power to issue subpoenas duces tecum related to the investigation of the finances of the City (see Matter of Goldin v Greenberg, 49 NY2d 566 [1980]). Based on a review of the Comptroller's request for information, this investigation appears to be a broad policy-based review of the City's initial public health and emergency response efforts to COVID-19 and does not appear to be strictly targeted to finding out how the City's response to the pandemic has affected the finances of the City. However, Section 93(b) provides the Comptroller with broad investigative authority of matters that affect City finances and does not strictly limit an investigation to only fiscal matters. As the Comptroller has demonstrated that the investigation addresses, at least in part, the impact of the City's response to the pandemic on the City's finances, this special proceeding is within the broad fiscal watchdog investigatory powers of the Comptroller.
Further, the court properly applied the public interest privilege to quash the document requests served on the Mayor and First Deputy Mayor. Generally, the public-interest privilege is a common-law rule that "attaches to confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged" because "the public interest would be harmed if the material were to lose its cloak of confidentiality" (Cirale v 80 Pine St. Corp., 35 NY2d 113, 117 [1974][internal quotation marks omitted]). The governmental body asserting the privilege must offer specific support as to the potential harm to the public from disclosure of the information and, in the rare case, this may require in camera examinations of the materials (id. at 119). The privilege will be applied where the government demonstrates that the public interest in confidentiality outweighs the public interest in disclosure (see Matter of World Trade Ctr. Bombing Litig., 93 NY2d 1, 8-9 [1999]), and the determination of this issue requires the court to engage in the requisite balancing of interests (see Smith v Watson, 150 AD3d 487, 488 [1st Dept 2017]).
The motion court correctly concluded, based on the affidavits presented, that in this particular circumstance, the interest in protecting the Mayor's and the First Deputy Mayor's predecisional and deliberative communications is stronger than the interest in allowing the Comptroller to review, and possibly publish, the communications as part of his investigation (see Matter of World Trade Ctr. Bombing Litig., 93 NY2d at 8-9). Given the ongoing threat of the pandemic, the Mayor and his leadership team needed access to information and unvarnished advice from all sources. This required that the sources have some assurance that their advice would remain confidential and free from fear of reprisal. The public disclosure of [*4]the requested documents involving confidential, deliberative communications among an inner circle of decisionmakers concerning an emergency response to a pandemic could chill future deliberations about pressing matters, potentially to the public's harm.
The Comptroller's request for a privilege log and in camera review of the documents over which the City claims privilege should be made to Supreme Court.
Supreme Court did not make a ruling whether a privilege log or in camera review is necessary because the only issue litigated was the applicability of the privilege.
We have considered the parties' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 12, 2021